Defendant-appellant and seller, Cynthia L. Moore, appeals the decision of the Clermont County Court of Common Pleas granting specific performance to plaintiff-appellee and buyer, Thomas Alford, based on the trial court's determination of a binding agreement for the sale of land. In addition, Moore challenges the trial court's denial of a counterclaim seeking damages due to a driveway built on the property in question. We affirm in part, reverse in part and remand.
Moore was the owner of one hundred seventeen acres of land in Goshen, but during the pendency of this case sold forty acres to a third party. Alford was a friend of Moore, and both Alford and his sons did work on the Moore property. The parties had for many years discussed Alford buying a parcel of land from Moore.
In November 1995, Moore signed a contract with Trout Lake Farm for the growing and harvesting of goldenseal, an expensive type of herb. Alford and his sons assisted Moore in planting the goldenseal crop which was completed in January of 1996. Moore was concerned that any property to be sold to Alford not include the goldenseal beds.
Fowler Agenbroad, a surveyor for Landsdale Surveying, agreed in an April 30, 1996 contract signed by Alford to survey the land that Alford intended to buy. Alford testified that Moore was aware of the survey, and Alford agreed to pay the surveyor. The job description on the contract is "15 acre Cut-Out, Legal Description, Closure, Plat." Agenbroad stated that "[t]he 15-acre cutout is the rough estimate of what size parcel we thought we were working with at the time we sent out the parcel." Agenbroad began his survey on June 3, 1996 and went to the property on a least four other occasions to complete the survey. According to Agenbroad, Moore witnessed the start of the survey on June 3, 1996 and was at the property during the survey on at least one other occasion. Agenbroad indicated that the partition line between the Moore property and the property to be sold to Alford was completed on June 26, 1996. The property to be sold included land where the goldenseal crop was being grown.
On June 14, 1996, Moore prepared a document on her home computer which stated:
 Tom Alford — work on farm approximately fifteen acres at $5,000/acre
 /s/ Cynthia Moore ----------------- sum of column C applied toward purchase price
 /s/ Cynthia Moore -----------------
Below this language is a spreadsheet listing work on goldenseal crop completed by Alford, and its corresponding value. Trout Lake Farm was paying for Moore's work on the goldenseal crop, but the money was being held by Moore. On June 7, 1996, Alford gave Moore an additional $2,000 as earnest money toward the purchase of land. The final total of column C was $6,430.81.
Bill Smith, the Service Director for Goshen Township, testified about an application for approval of a driveway on the Moore property Alford intended to buy. According to the application, when the driveway was installed, Goshen Township must install adequate drainage through use of a culvert pipe. On March 19, 1996, Alford received permission to build the driveway by signing his name as the owner of the property. However, Alford did not complete construction of the driveway until June 1996. After the driveway was completed, Moore complained to Goshen Township about approving construction of the driveway on her property. However, Moore eventually signed the application for approval as owner because she was concerned, based upon advice from friends, about Alford becoming the owner through adverse possession.
Alford called Moore on or about June 26, 1996 and had a conversation about the survey. Alford testified that Moore was upset that the property was 10.877 acres, less than the fifteen acres originally estimated. On June 28, 1996, Alford received a letter from Moore's attorney advising Alford that he was trespassing on the property.
On July 12, 1996, Alford filed a complaint for specific performance and damages. Alford sought to have the 10.877 acres, as designated in a plat map and June 26, 1996 legal description, sold to him. On September 12, 1996, Moore answered and filed a counterclaim against Alford. The counterclaim alleged damage to the property by installation of the driveway. On October 10, 1997, Moore moved for summary judgment. The motion was denied by the trial court on December 9, 1997 and the case was tried on December 19, 1997. After Alford's case in chief, Moore's motion to dismiss was overruled. On January 2, 1998, the trial court found in favor of Alford and ordered the 10.877 acres of land sold to Alford for $5,000 per acre. Moore reserved the right to harvest the goldenseal crop on the 10.877 acres on or before December 1, 1999. Alford was given a credit of $6,340.81 previously contributed toward the purchase price. A March 19, 1998 final judgment entry indicates Moore's counterclaim was found to be without merit.
From the March 19, 1998 final judgment entry, Moore filed a timely notice of appeal and presents six assignments of error for our review:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED AS A MATTER OF LAW BY DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, BECAUSE THE PLAINTIFF'S COMPLAINT FOR SPECIFIC PERFORMANCE IS BARRED BY THE STATUTE OF FRAUDS.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN THE APPLICATION OF A PREPONDERANCE OF EVIDENCE STANDARD TO AN ALLEGED ORAL CONTRACT FOR THE SALE OF REAL ESTATE.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING THAT PLAINTIFF'S EXHIBIT NO. 1 IS SUFFICIENT MEMORANDA SIGNED BY THE DEFENDANT WHICH, WHEN COUPLED WITH THE ORAL AGREEMENTS AND WRITTEN DOCUMENTS SUPPORTING SUCH MEMORANDUM CONSTITUTES A CONTRACT TO SELL.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING PLAINTIFF'S COMPLAINT FOR SPECIFIC PERFORMANCE.
Assignment of Error No. 5:
 THE DECISION OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Assignment of Error No. 6:
 THE DENIAL OF DEFENDANT'S COUNTERCLAIM IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In the first and fourth assignments of error, Moore claims that the contract between the parties violates the statute of frauds, which requires certain contractual agreements, including the sale of land, to be in writing.[1] In Ohio, the statute of frauds is codified in R.C. 1335.05 and states in relevant part that:
 No action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them, * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.
In order to satisfy the statute of frauds, the memorandum must (1) identify the subject matter, (2) demonstrate a valid contract between the parties and (3) state the essential terms with reasonable certainty. North Coast Cookies, Inc. v. Sweet Temptations, Inc. (1984), 16 Ohio App.3d 342, 348-49 (citations omitted). In a contract for the sale of land, one of the essential terms is a description of the property to be sold.
In this case, the description of the land in the June 14 memorandum prepared and signed by Moore states "approximately 15 acres" as the parcel of land to be sold. It is clear that this description, in itself, is not a description sufficiently definite to satisfy the statute of frauds. However, Alford argues that the June 14 memorandum, signed by Moore, can be read in conjunction with a plat map describing the 10.877 acres surveyed and an overhead view of the property.[2] However, Alford's approach is foreclosed by longstanding Supreme Court of Ohio precedent. In Thayer v. Luce (1871), 22 Ohio St. 62, paragraphs one and two of the syllabus, the court held that:
 Several writings, though made at different times, may be construed together, for the purpose of ascertaining the terms of a contract required, by the statute of frauds, to be in writing and signed by the party to be charged therewith.
 If some only of such writings be so signed, reference must be specifically, made therein to those which are not so signed; but if each of the writings be so signed, such reference to the others need not be signed, such reference to the others need not be made, if, by inspection and comparison, it appears that they severally relate to or form part of the same transaction. (Emphasis added.)
See, also, Beggin v. Ft. Worth Mtge. Corp. (1994), 93 Ohio App.3d 333,337, discretionary appeal not allowed, 70 Ohio St.3d 1415. The only document signed by Moore is the June 14 memorandum. None of the other documents introduced at trial, including the plat map and overhead view of the property are signed, nor are they specifically referenced in the June 14 memorandum.[3]
It is equally clear that parol evidence cannot be introduced to describe the property in question and, therefore, satisfy the statute of frauds. The Supreme Court of Ohio has stated that:
 Parol evidence may be resorted to for the purpose of applying the description contained in a writing to a definite piece of property and to ascertain its location on the ground, but never for the purpose of supplying deficiencies in a description otherwise so incomplete or incorrect as not to identify the land. The description must be in itself capable of application to something definite before parol testimony can be admitted to identify any property as the thing described. (Emphasis added.)
Schmidt v. Weston (1948), 150 Ohio St. 293, paragraph two of the syllabus. We recognize that a description of land need not provide metes and bounds; however, the description must refer to an identifiable parcel of land in order to satisfy the statute of frauds. Hausser/Van Aken, Ohio Real Estate Law and Practice (1993) 441, Section 23.12(D). The phrase "approximately fifteen acres" fails to meet that minimum standard. See Stanfield v. Fisher (1973), 37 Ohio App.2d 48, 50 (specific performance not warranted where only description of property to be sold was the phrase "my farm."). Thus, we conclude that the agreement between the parties does not meet the requirements of R.C. 1335.05, the statute of frauds.
We are aware that Ohio recognizes that the equitable principle of partial performance may remove a contract from the requirements of R.C. 1335.05. McCarthy, Lebit, Crystal Haiman Co., L.P.A. v. First Union Mgt., Inc. (1993), 87 Ohio App.3d 613,625. However, a thorough review of precedent indicates that this exception has been narrowly cast. Partial performance must be premised, at a minimum, on the buyer taking possession of the property and a showing of fraud by the seller. Tier v. Singrey (1951), 154 Ohio St. 521, 526. See, also, Stoops v. Miller (1994), 97 Ohio App.3d 265.
It is undisputed that Alford never had possession of the property in question. Appellant did modify the property in question by installing a driveway. While an addition to a property can contribute to a finding of partial performance, such improvement can remove an agreement from the statute of frauds only if the buyer had possession of the property. Even assuming the driveway constituted an improvement and Moore agreed to this improvement, Alford was not the owner of the 10.877 acres nor had he taken possession of the property. In any event, the record does not support Moore acting in a fraudulent manner.
Similarly, without possession, the partial payment by Alford, including but not limited to the $2,000 earnest money, does not in itself constitute partial performance in order to remove this case from the statute of frauds. Cf. France v. McKenzie (Senica C.C. 1899), 11 Ohio C.D. 245, aff'd (1900), 63 Ohio St. 565. We agree that Moore was holding money owed to Alford that was paid to her by Trout Lake Farm, as well as money paid directly from Alford to Moore. However, this fact only shows that the parties intended to reach a final agreement, pending the final partition of the property. Therefore no partial performance has occurred which would remove this case from the requirements of the statute of frauds.
In an agreement for the sale of land, the only other possible exception to the statute of frauds is promissory estoppel. See, generally, Promissory Estoppel as Basis for Avoidance of Statute of Frauds (1974 Supp. 1998), 56 A.L.R.3d 1037. Promissory estoppel is defined as "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce enforcement of the promisor." McCarthy, 87 Ohio App.3d at 624, citing McCroskey v. State (1983), 8 Ohio St.3d 29, 30.
It is not clear that Ohio even utilizes this exception to save an oral agreement for the sale of land. See Seale v. Citizens S 
L Assn. (C.A. 6, 1986), 806 F.2d 99, 102-04 (the court, interpreting Ohio law, concluding that the Supreme Court of Ohio would not recognize promissory estoppel to vitiate the statute of frauds in an oral agreement for the sale of land). Even when promissory estoppel has been applied in this context, it has been limited to "(1) a misrepresentation that the statute's requirements have been complied with or (2) a promise to make a memorandum of the agreement." McCarthy at 627. We agree that this balanced approach encourages
 those in business to reduce their agreements to writing and thereby adhering to the policy considerations beyond the statute of frauds while at the same time providing a mitigating effect to the harsh application of the statute of frauds and assures fairness in business relationships by protecting one who relies to his detriment on the promise of another.
Id.
Appellant never promised to sell the 10.877 acres of land described in the June 26, 1996 legal description. The parties, at most, had an agreement to sell "approximately fifteen acres" of land. There is no evidence that Moore represented the June 14 memorandum complied with the statute of frauds, nor does the record show Moore promised to prepare a final memorandum that would meet the requirements of the statute of frauds. At best, the record indicates the parties disputed the boundaries of the parcel of land agreed to be sold and Moore backed out of the oral agreement.
Any equitable claim seeking to avoid the statute of frauds must constitute more than a potential seller refusing to comply with an oral agreement for the sale of land. If that act alone could vitiate the statute of frauds, R.C. 1335.05 would be rendered meaningless. As the Supreme Court of Ohio explained:
 It must appear that the promise was used as a means of imposition and deceit. If the case taken as a whole is one of fraud, the verbal promise may be received in evidence as one of the steps by which the fraud was accomplished. To deduce the fraud from the [oral] contract and then give effect to the contract, on the score of fraud, is reasoning in a circle. The fraud which will give jurisdiction to compel performance of the parol * * * [agreement] must consist in something more than a mere breach of parol undertaking * * *.
Marion Credit Assn. v. Cochran (1988), 40 Ohio St.3d 265, 274, citing Watson v. Erb (1877), 33 Ohio St. 35, 48. In our view, Alford cannot show he detrimentally relied on fraudulent promises by Moore which justify the equitable remedy of specific performance.
In closing our discussion, we note that it is precisely the type of dispute in this case which demonstrates the necessity of the statute of frauds. We agree with our sister court that "[a] signed writing provides greater assurance that the parties and the public can reliably know when such a transaction occurs. It supports the public policy favoring clarity in determining real estate interests and discourages indefinite or fraudulent claims about such interests." North Coast Cookies,16 Ohio App.3d at 348.
Since the agreement between the parties violates the statute of frauds, the contract cannot be enforced by specific performance. Accordingly, the trial court erred by granting specific performance in favor of Alford and the first and fourth assignments of error are well-taken. Therefore, this cause is remanded and the 10.877 acre parcel of land must be returned to Moore.[4] Further, upon remand, the trial court must determine and order returned any and all money contributed by Alford to Moore for the purchase of the "approximately fifteen acre" parcel. This includes, but is not limited to the $2,000 earnest money Alford gave to Moore, money received from Trout Lake Farm and held by Moore for Alford's work on the goldenseal crop, as well as any interest, if appropriate by law. Due to the disposition of the first and fourth assignments of error, assignments of error two, three and five are overruled as moot.
In the sixth assignment of error, Moore argues that the denial of her counterclaim is against the manifest weight of the evidence. A decision of a trial court supported by competent, credible evidence will not be reversed as being against the manifest weight of the evidence. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. The evidence concerning the utility of the driveway and/or damage to trees on the property when the driveway was constructed can best be characterized as vague. Moore's expert witness, Gerhard Hillmann, a homebuilder, based his entire testimony about damages on a self-serving document prepared by Moore. The trier of fact was entitled to give this testimony little or no weight. In addition, John A. Bucher, a real estate appraiser, testified that the value of the property was increased by the driveway. After reviewing the totality of the evidence, the trial court was entitled to find for Alford on Moore's counterclaim. Accordingly, the sixth assignment of error is overruled.
Judgment affirmed in part, reversed in part and remanded for proceedings not inconsistent with this opinion.
KOEHLER and POWELL, JJ., concur.
[1] Moore argues that the statute of frauds mandates against a finding of specific performance in this case and summary judgment on that issue would have been appropriately granted to Moore. Moore also filed a motion to dismiss after Alford's case in chief. We consider the first and fourth assignments of error on the basis that Alford's evidence at trial, as a matter of law, is insufficient to satisfy the statute of frauds.
[2] Alford testified the overhead view of the property was a "Department of Agriculture fly-over in 1968."
[3] Alford claims the overhead view of the property references the June 14 memorandum because it describes two parcels of land, one seven acres and another eight acres for a total of "approximately fifteen acres." This argument fails for two reasons: (1) the connection is far from the specific reference needed and (2) the June 14 memorandum and the overhead property view, even read together, still fail to supply an adequate description of the property to be sold.
[4] An April 23, 1998 entry indicates the transfer of the land to Alford was stayed pending the outcome of this appeal and the 10.877 acres of land had been temporarily transferred to Thomas H. Flessa, Trustee.