NORTH COAST COOKIES, INC.,
APPELLEE AND CROSS-APPELLANT, *v.*
SWEET TEMPTATIONS, INC. ET AL.,
APPELLANTS AND CROSS-APPELLEES.

(Nos. 47652 and 47653—Decided July 23, 1984.)

Messrs. *Guren, Merritt, Feibel, Sogg & Cohen* and Mr. *Stanley M. Fisher,* for appellee and cross-appellant North Coast Cookies, Inc.

Messrs. *Benesch, Friedlander, Coplan & Aronoff,* Mr. *Edward Kancler* and Mr. *Kenneth A. Bravo,* for appellant and cross-appellee Sweet Temptations, Inc.

Messrs. *Jones, Day, Reavis & Pogue,* Mr. *George J. Moscarino* and Mr. *James J. Little,* for appellants and cross-appellees Cole National Corp. and Original Cookie Co., Inc.

MARKUS, P.J. A franchised retailer of gourmet cookies and ice cream negotiated to purchase assets and the leasehold of a confectionary store in a prestigious shopping mall. The trial court ruled that those negotiations produced a binding agreement between the plaintiff-purchaser and the defendant-seller. The court entered extensive findings and conclusions, ordered specific performance of their agreement, and enjoined a competitor cookie company from interfering with the transaction. All parties appeal.

## I. The Issues

Each of the parties fails to comply with the requirements of App. R. 16(A) and Local App. R. 6, which govern the contents of appellate briefs. The defendant-seller (Sweet Temptations) and the purchaser's competitor (Cole National and its subsidiary Original Cookie, hereinafter collectively referred to as "Cole") filed joint briefs. Their principal brief asserts nine assignments of error which challenge eight of the trial court's factual findings and seven of its legal conclusions. For its cross-appeal, the plaintiff-purchaser (North Coast Cookies) asserts two errors which challenge two of the trial court's conclusions of law.

Following their assigned errors, each appellant has listed a distinctively different "Statement of Issues," which purportedly encompass their respective assigned errors. Each appellant then presents its legal arguments which are structured around a paraphrase of its "Statement of Issues." After designating their initial list of assigned errors, appellants make no further reference to them.

App. R. 12(A) directs this court to determine the merits of appeals "on the assignments of error set forth in the briefs required by Rule 16." App. R. 12(A) further provides:

"* * * Errors not specifically pointed out in the record *and separately argued by brief may be disregarded.* All errors assigned and briefed shall be passed upon by the court in writing, stating the reasons for the court's decision as to each such error." (Emphasis added.)

The "Assignments of Error" should designate specific rulings which the appellant challenges on appeal. They may dispute the final judgment itself or other procedural events in the trial court. The "Statement of Issues" should express one or more legal grounds to contest the

procedural actions challenged by the assigned errors. They may subdivide questions presented by individual assigned errors, or they may be substantially equivalent to the assigned errors.

In this case, we could summarily affirm, by rejecting both the appeal and the cross-appeal for failure to argue separately any assigned error. The parties' failure to argue their assigned errors prevents us from considering them. In the interest of fairness, we will treat their respective "Statement of Issues" as their assigned errors.

The defendant-seller and the purchaser's competitor claim that the trial court: (1) deprived them of a fair opportunity to prepare and present their evidence, (2) enforced an agreement without sufficient certainty and specificity, and (3) enforced an agreement without sufficient written commemoration to satisfy the Statute of Frauds. The plaintiff-purchaser challenges the court's rejection of its claim against its competitor for malicious interference with the purchase contract. The plaintiff-purchaser disputes that ruling as contrary to the manifest weight of the evidence.

The trial court's substantive rulings on these matters were each supported by adequate factual findings which were in turn supported by substantial evidence. The court did not abuse its discretion by the disputed procedural rulings. Further, the parties failed to request actions which would have effectively eliminated some of their complaints on appeal. Consequently, we affirm the trial court's judgment.

## II. Limitations on Preparation and Presentation

Defendant-seller and plaintiff's competitor urge that the court denied them a reasonable opportunity to prove their contentions.

In its complaint, plaintiff-purchaser sought specific performance of its alleged purchase agreement and an injunction against the transfer of those assets to anyone else. The complaint also designated five unknown "John Doe" defendants who had tortiously interfered with plaintiff-purchaser's contract rights.

The court granted a temporary restraining order and extended it by consent of the parties to prevent defendant-seller from prematurely transferring its assets. Approximately one month after plaintiff filed this action, the court began a consolidated hearing on plaintiff's preliminary injunction motion and a trial on the merits. No party claims that this expeditious schedule unfairly prejudiced its rights.

The Cole interests complain that plaintiff failed to name them as defendants in the complaint or by amendment before the trial began.[1] They contend

_____

[1] The Cole interests assert that plaintiff had "unclean hands" because it described them as unidentified "John Does" rather than serving them as defendants. Cole claims that plaintiff thereby lost its right to equitable relief.

However, the "clean hands" doctrine concerns grossly inequitable behavior in the underlying transaction which is the subject matter of the suit. *Kinner* v. *Lake Shore & Michigan Southern Ry. Co.* (1904), 69 Ohio St. 339, paragraph one of the syllabus; *Goldberger* v. *Bexley Properties* (1983), 5 Ohio St. 3d 82. A party's conduct in the litiga-

tion itself may cause it to suffer sanctions, but it will not invoke the "clean hands" doctrine.

Further, a litigant has no obligation to sue fully identified adverse entities, unless they are indispensable parties. Civ. R. 19(B). The adverse litigant and persons who have not been sued can cause the joinder of a missing party whose absence jeopardizes their respective interests. Civ. R. 19(A) and 24.

However plaintiff described the Cole interests, it had no unilateral duty to name them as parties defendant. However anxious Cole may have been to participate, they had

that plaintiff knew their identity as the competitor who allegedly interfered with plaintiff's purchase contract. There is no dispute that the Cole interests were themselves seeking to purchase the same assets and leasehold.

Although the Cole interests knew about the suit from its outset, they made no request to intervene before the trial began. They had previously agreed to indemnify defendant-seller against this claim and presumably supplied counsel for defendant-seller. Cole's own counsel obtained permission to participate as an *amicus curiae*, sat at the trial table with counsel for defendant-seller, and filed briefs.

On the last day of the four-day trial, Cole moved to intervene formally so they could cross-examine defendant-seller's president. The court denied that motion, apparently because its tardy presentation disrupted orderly proceedings for a trial that was near completion. One month after the trial evidence closed, the court reviewed post-trial briefs and granted plaintiff's request to enforce plaintiff's purchase agreement.

One month later, defendant-seller filed a motion for relief from that judgment on the ground that the court should have allowed Cole to intervene. Even though the Cole interests were not parties then, they joined in that motion. In an apparent effort to consider all relevant evidence, the court vacated its judgment, made the Cole interests additional parties defendant, and reopened the trial. No party appealed then, or later assigned that order as error, so we need not determine its propriety.

At the further trial proceedings, the court allowed the Cole interests to cross-examine any witnesses called after intervention was denied in the previous proceedings. The court ultimately permitted all parties to present additional witnesses or documents, if they demonstrated their relevance by an application two days before the supplementary trial. The further trial began four months after the suit was filed, three months after the first segment of the trial, and one month after the court vacated its original judgment.

Defendant-seller recalled the shopping mall manager for further cross-examination as its sole witness at the supplementary trial. The Cole interests called plaintiff's president for further cross-examination as their sole witness. The plaintiff-purchaser presented testimony from several Cole officers. The court did not deny any party's request to call a witness or submit other relevant evidence. Following these proceedings, the court entered a new judgment enforcing the plaintiff's purchase agreement and enjoining the Cole interests from interfering with its accomplishment.

Defendant-seller and the Cole intervenors complain that the court: (a) refused to order a complete new trial which would totally replace the evidence presented in the first proceedings, (b) denied them sufficient time to prepare for the second phase of the trial, and (c) denied them a continuance during the second phase of the trial to gather evidence in another state.

We see no possible prejudice to defendant-seller by any of the disputed procedures in the second phase of the trial. Defendant-seller had no right to have the Cole intervenors as parties or to depend on Cole for its evidence. Defendant-seller made no complaint about its opportunity to prepare for or

---

no reasonable complaint when they failed to seek timely intervention. However anxious defendant-seller may have been to have Cole interests as parties, it had no reasonable complaint when it did not assert that defense. Civ. R. 12(B)(7) and 19(A). Cf. *Layne* v. *Huffman* (1975), 42 Ohio St. 2d 287 [71 O.O.2d 260].

present its case in the first trial. It cannot reasonably complain about its opportunity to supplement its evidence after it lost, simply because it had limited time to change the court's conclusions.

Likewise, we perceive no unfair prejudice to the intervening Cole interests. They were aware of the issues before suit was filed. They knew about the suit immediately. They did not seek to intervene before the original trial. They had counsel present throughout the first segment of the trial. Presumably defendant-seller's counsel cooperated with their counsel. Every discovery request they made was duly answered. Their request for a total new trial was premised solely on a claim that newly discovered evidence would change the original result. They were not precluded from discovering or presenting any clearly identified evidence. They made no clear request that the second phase of the trial be postponed.

In all these circumstances, the trial court did not abuse its discretion by the procedures used. Cf. *State* v. *Lane* (1976), 49 Ohio St. 2d 77 [3 O.O.3d 45], paragraph three of the syllabus (discretion in denying new trial for newly discovered evidence); *Edwards* v. *Edwards* (July 6, 1978), Cuyahoga App. No. 37347, unreported, at pages 4-5 (discretion in reopening concluded trial); *State* v. *Taylor* (Apr. 14, 1977), Cuyahoga App. No. 35861, unreported, at page 5 (discretion in reopening concluded trial).

### III. Certainty and Specificity

Defendant-seller and plaintiff's competitor argue that the purchase agreement lacked sufficient certainty and specificity. They contend that the alleged contract was incomplete and that an agreement to agree is not enforceable by equitable orders.

In *Mr. Mark Corp.* v. *Rush, Inc.* (1983), 11 Ohio App. 3d 167, 169, this court applied the principles set forth in 1

Restatement of the Law 2d, Contracts (1981) 92, 95, Section 33 and its commentary:

" '§ 33. Certainty

" '(1) Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.

" '(2) The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.

" '(3) The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance.'

" '* * * Comment *a* to Section 33 of the Restatement adds:

" '* * * [T]he actions of the parties may show conclusively that they have intended to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon. In such cases courts endeavor, if possible, to attach a sufficiently definite meaning to the bargain.

" 'An offer which appears to be indefinite may be given precision by usage or trade or by course of dealing between the parties. Terms may be supplied by factual implication, and in recurring situations the law often supplies a term in the absence of agreement to the contrary. * * * Where the parties have intended to conclude a bargain, uncertainty as to incidental or collateral matters is seldom fatal to the existence of the contract.'

"Comment *f* to Section 33 notes at page 95:

" 'The more important the uncertainty, the stronger the indication is that the parties do not intend to be bound; minor items are more likely to be left to the option of one of the parties or to what is customary or reasonable.' "

See, also, 1 Corbin, Contracts (1963), Section 95.

The Supreme Court approved and applied cognate language from the Restatement and Corbin, in *Normandy Place Assoc.* v. *Beyer* (1982), 2 Ohio St. 3d 102, at 105-106.

In this case, the presidents of the plaintiff-purchaser and the defendant-seller signed a document which said:

"3/19/83

"The undersigned agree that North Coast Cookies, Inc. will purchase the lease agreement, all furniture, trade fixtures and equipment of the store at Beachwood Place Mall in Beachwood, Ohio known as Sweet Temptations.

"The agreed upon amount is one hundred twenty thousand dollars ($120,000). Terms of physical store transfer and terms of the payment and interest will be further decided and shall be reasonable to both parties.

"This agreement is bound by the consideration of $2500.

"Agreed to by

/s/ Allan Fox pres.

Sweet Temptations, Inc.

"Agreed to by

/s/ Kenneth Dery

/s/ Robert Dery

North Coast Cookies, Inc."

Since the document did not purport to constitute the entire agreement between the parties, the court properly received other evidence about the terms. Cf. *Ward* v. *Bickerstaff* (1946), 79 Ohio App. 362, 364; *Moeller* v. *Boeke* (1966), 5 Ohio App. 2d. 139, 141 [34 O.O.2d 288]; *Roudebush Realty Co.* v. *Toby* (1955), 99 Ohio App. 524 [59 O.O. 421].

Essentially undisputed testimony established that the plaintiff-purchaser offered to pay cash immediately and to accept transfer of defendant-seller's assets promptly. The defendant-seller preferred to delay its receipt of the purchase price and to delay the transfer. The two parties subsequently agreed to a payment schedule, related interest payment, and a specific date for the plaintiff-purchaser to take possession. Thereafter, plaintiff-purchaser acceded to defendant-seller's request to advance the possession date one month, and its later request to return to the originally agreed date.

Defendant-seller and plaintiff's competitor argue that there was no enforceable agreement because (a) the duration of the lease being transferred remained unsettled, (b) a later prepared document containing miscellaneous additional provisions was never executed, and (c) plaintiff-purchaser failed to prove that the shopping mall would give its required consent to the lease transfer. None of these contentions has merits.

The two contracting parties unequivocally agreed to the transfer of defendant-seller's remaining lease, which had specific finite terms. They also agreed to a specific transfer date which would be the beginning of the leasehold assignment. Their later negotiations or agreements to modify an agreed transfer date did not destroy the existing contract. At most those later discussions produced possible amendments of an existing agreement.

Similarly, the defendant-seller's failure to execute a more formal contract with additional terms did not destroy the established agreement. The trial court had ample reason to conclude that the contracting parties had agreed upon all significant terms of their bargain. The court then had authority to fashion a remedy covering less significant matters that conformed with their expressed intentions, custom and practice in that field, or their reasonable expectancies.

Since the two contracting parties expressed agreement to terms in Cole's later proposed purchase contract, the court could properly require them to comply with those terms. If no such written document existed, the court had discretion to fashion a remedy which supports the contracting parties' agree-

ment on all fundamental terms. Cf. 3 Restatement of the Law 2d, Contracts (1981) 179, Section 362, Comment *b; Mr. Mark Corp.* v. *Rush, Inc., supra.* We will not substitute our judgment for the trial court's construction of the contract which is sufficiently supported by the evidence. Cf. *Toth Auto Lease, Inc.* v. *Palladina* (Jan. 27, 1983), Cuyahoga App. No. 44965, unreported.

Finally, the lack of certainty about the landlord's consent did not preclude the court's equitable orders. The shopping mall manager, who is also an officer of the landlord mall, testified that he approved the lease assignment to plaintiff-purchaser. He said that he lacked authority to grant formal approval. However, his actions and his apparent authority might well estop the landlord from denying its approval.

No one testified and no documentary evidence suggested that the landlord had disapproved or would disapprove the proposed lease assignment. Indeed, all evidence demonstrated that the plaintiff-purchaser is a highly desirable tenant with an established favorable history of leases from the same landlord. Some circumstantial evidence tended to show that the landlord would agree to the lease assignment, if it had not already done so.

In these circumstances, the trial court was warranted in directing that the transaction go forward. Of course, the court did not then have jurisdiction over the landlord, so the court could not enforce its orders against the landlord's wishes. However, the court did have jurisdiction over the contracting parties, so it could require their best efforts to obtain agreement from the landlord. The details of enforcement are best left to the trial court. Cf. *Mr. Mark Corp.* v. *Rush, Inc., supra,* 168, at fn. 2.

### IV. The Statute of Frauds

The defendant-seller and the plaintiff's competitor contend that no writing satisfied the requirement in R.C. 1335.05 for the transfer of defendant-seller's leasehold interest. Since the lease assignment was a significant part of the total consideration for this transaction, they dispute the enforceability of the agreement. R.C. 1335.05 provides in pertinent part:

"No action shall be brought whereby to charge * * * a person upon an agreement made upon consideration of * * * a contract or sale of lands, tenements or hereditaments, or interest in or concerning them * * * *unless the agreement upon which such action is brought, or some memorandum or note thereof,* is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized." (Emphasis added.)

This statute serves to ensure that transactions involving a transfer of realty interests are commemorated with sufficient solemnity. A signed writing provides greater assurance that the parties and the public can reliably know when such a transaction occurs. It supports the public policy favoring clarity in determining real estate interests and discourages indefinite or fraudulent claims about such interests.

This statute does not require that the parties' full agreement be reduced to writing, even though it involves realty transfers. It does not concern the substance or form of such agreements. Rather, it mandates some writing signed by the party sought to be held or that party's authorized agent, so that the agreement's existence has sufficient certainty. Cf. *Ward* v. *Bickerstaff, supra.*

The memorandum satisfies the Statute of Frauds if it (1) identifies the subject matter, (2) establishes that a contract has been made, and (3) states the essential terms with reasonable certainty. *Kling* v. *Bordner* (1901), 65 Ohio St. 86, paragraph one of the syllabus; *Jacobs* v. *Joseph E. Copp Co.* (1930), 123

Ohio St. 146, 151-152; 1 Restatement of the Law 2d, Contracts (1981), Section 131; 2 Corbin, Contracts (1950), Section 499.

The memorandum need not contain all the terms of the agreement. *Normandy Place Assoc.* v. *Beyer, supra; Ward* v. *Bickerstaff, supra; Clotfelter* v. *Telker* (App. 1947), 52 Ohio Law Abs. 268, 271-272; *Schafer* v. *Faylor* (1944), 74 Ohio App. 533, 536, 543 [30 O.O. 228]. For personalty, the legislature directs that those essential terms encompass only the quantity of goods sold. R.C. 1302.04. For an agreement to transfer a lease, the Statute of Frauds is satisfied by a signed writing which sufficiently identifies the parties, the lease involved, and perhaps the consideration for its transfer.

In addition to the signed agreement quoted above, the defendant-seller's president signed and sent the following letter to the landlord's manager:

"This letter will serve as offical notice that I have reached written agreement with North Coast Cookies, Inc. [plaintiff-purchaser] who does business as David's Cookies for the assignment of my lease at Beachwood Place of the space currently known as Sweet Temptations.

"As we discussed on the phone last week, David's Cookies and their willingness and capability of doing both fresh baked cookies and the service of ice cream make them a preferred tenant. I am well aware of the success and history of David's Cookies with the Rouse Company [the controlling interest in the landlord mall].

"I will let you know the final date of the physical transfer of the premises just as soon as we have made a final decision on it with North Coast Cookies, Inc.

"Very truly yours,
"SWEET TEMPTATIONS, INC.
/s/ Allan Fox
Allan Fox, President

"cc: Mr. Kenneth Dery
Mr. Robert Dery
[officers of North Coast Cookies]"

Taken together, the two signed documents leave no room for doubt that the named parties had reached a definite agreement. The writings sufficiently identified the location of the leased property and the total consideration for the contract which included the lease assignment. The defendant-seller and the Cole interests again argue that the writing did not identify the duration of the lease transferred.

We previously ruled that the written and oral agreements collectively provided sufficient specificity to constitute a definite contract. We now hold that the written agreement alone provided sufficient certainty about the "essential terms" of that contract. It called for an assignment of the remaining portion of the relatively lengthy leasehold, which by its terms extended another five and one-half years.

Its failure to state a specific date for the transfer of possession did not cause its demise at the hands of the statute of Frauds. Cf. *Schafer* v. *Faylor, supra* (74 Ohio App.), at 539-540. Possession would reasonably transfer at the final closing of the transaction, if the parties did not agree otherwise. *Id.* At the least, the writing evidenced an agreement between the parties that possession would transfer within a reasonable time. A contrary rule would require every written contract for the sale of realty interests to contain the date for transfer of possession. Common experience rejects such a rule.

## V. Plaintiff's Claim Regarding Cole's Alleged Malicious Interference With Plaintiff's Contract

For its cross-appeal, plaintiff-purchaser challenges the trial court's findings that plaintiff's competitor (Cole) had not maliciously interfered

with the contract. In substance, the trial court found that the defendant-seller deceptively encouraged the Cole interests to continue negotiating the purchase after defendant-seller contracted with the plaintiff.

The court found that defendant-seller acted in bad faith to conceal details of its dealings with the plaintiff-purchaser. Defendant-seller supplied the Cole interests with a copy of the signed partial agreement but misrepresented to them that further terms remained unsettled. The Cole interests showed that document to multiple in-house legal counsel, who advised that the document alone was not a binding contract. Whether that advice was good or bad, it tends to deny malice by the Cole interests in their continued negotiation efforts.

There was substantial credible evidence to support the court's findings that Cole did not maliciously interfere with plaintiff's contract. Consequently, we cannot conclude that the trial court's finding was contrary to the manifest weight of the evidence. Cf. *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261], syllabus; *State, ex rel. Shady Acres Nursing Home, Inc.,* v. *Rhodes* (1983), 7 Ohio St. 3d 7, 8-9; *Kinney* v. *Mathias* (1984), 10 Ohio St. 3d 72, 73-74.

Additionally, plaintiff-purchaser demonstrates no prejudice from the disputed finding. Plaintiff made no claim for compensatory or punitive damages in its original complaint or its later amended complaint. Aside from a request for costs and attorney fees, plaintiff's pleadings sought solely equitable relief against any party. In those circumstances, Civ. R. 54(C) precluded any monetary damage award even if the evidence had warranted it.

The court did order the Cole interests not to interfere with the completion of this transaction. Hence, plaintiff recovered all relief against Cole that its pleadings permitted. Plaintiff did not assign any refusal by the court to permit a timely amendment of plaintiff's pleadings, and the record shows no such refusal.

## VI. Conclusion

None of the assigned errors or the issues raised for the appeal or the cross-appeal has merit. The trial court's judgment is affirmed.

*Judgment affirmed.*

ANN MCMANAMON, J., concurs.

PATTON, J., dissents.