CONSERVATORSHIP OF JOURNAL ENTRY AND OPINION
Appellant Phillip A. Lawrence, Esq., pro se, conservator for the Estate of Leroy Murad, appeals from the October 12, 2000 one-page judgments of the trial court which: (1) denied the conservator'smotion for findings; (2) overruled the conservator's objections to the Magistrate's report and adopted said report as the judgment of the court; (3) granted the conservator's July 3, 2000 application for attorney fees in the modified amount of $4,510; and, (4) granted the conservator's July 7, 2000 application for authority to pay attorney fees, on behalf of attorney James T. Flaherty, in the modified amount of $700. For the reasons adduced below, we affirm.
A review of the record on appeal indicates that on July 14, 1998, Leroy Murad (Murad), at the age of 83, filed an application for the appointment of an indefinite conservatorship over his person and estate due to physical infirmities. Murad identified three daughters (Elizabeth Cassamata, Kathryn Murad, and Paula Colburn) and two sons (John and Mark Murad) as his next of kin. The proposed conservator was identified as attorney Nelli Johnson.
On September 1, 1998, the Magistrate, following a hearing, recommended that the application for conservatorship be granted and set bond at $48,000. Letters of Conservatorship were issued to attorney Nelli Johnson, and bond posted that same date.
The conservator's initial inventory, filed October 20, 1998, valued the ward's South Euclid, Ohio, home at $150,000, and acknowledged monthly income to the ward in the amount of $2,254.82 ($995 per month from Social Security and $1,259.82 per month from a pension from Cleveland State University). The ward's monthly expenses, not including mortgage, were approved on November 2, 1998, in the amount of $1,200 per month.
On February 9, 2000, attorney Phillip A. Lawrence applied to become the successor conservator to the ward. On February 28, 2000, attorney Nelli Johnson resigned as the conservator and attorney Lawrence was appointed in Johnson's place as the successor conservator, for only the estate of the ward. Bond was posted by conservator Lawrence in the amount of $136,000. Thereafter, on March 9, 2000, attorney Johnson, pursuant to court order, filed her final conservator's account for the period of July 9, 1999 to March 9, 2000. This account identified total disbursements and receipts, for the period in the amount of $33,733.25 each. Approximately $22,000 in cash, which was transferred as a disbursement to the successor conservator, remained in the estate accounts.
On March 28, 2000, conservator Lawrence applied for authority to expend $700 per month from estate assets to provide for the partial support of two of the ward's adult children (Catherine and Mark Murad). The trial court denied this application on March 28, 2000.
Also on March 28, 2000, the trial court approved the conservator's application to expend $2,000 per month for the ward's maintenance[1] and the application to expend $17,000 toward the refinancing of the ward's home (which was then in foreclosure).
On July 3, 2000, conservator Lawrence applied for authority to pay attorney fees in the amount of $7,262.50 (58.10 hours at $125 per hour for the period of January 24, 2000 through June 28, 2000, according to the itemized fee statement attached to the application) for services performed on behalf of the ward.
Also on July 3, 2000, conservator Lawrence filed an estate inventory reflecting $125,000 in real estate value and $27,544.80 in annual income ($1,032 per month from Social Security and $1,263.40 per month from the ward's pension), with a balance of $5,817.58 remaining in the estate account.
On July 7, 2000, conservator Lawrence filed an application for authority to pay attorney fees in the amount of $4,806 (40.05 hours at $120 per hour) for itemized services rendered to the estate by attorney James T. Flaherty.
On July 18, 2000, attorney Russell Baron was appointed as an independent third-party guardian of Leroy Murad.[2]
On September 5, 2000, subsequent to an oral hearing[3] on the applications for fee filed in July of 2000, the Magistrate filed his seven-page report and recommendation. In this report, which generally reiterated the procedural and financial history of this case as documented above, the Magistrate found that as of August 8, 2000, the estate account had a cash balance remaining of $5,000 and that the estate had monthly income of $2,295.40 ($1,032 from Social Security and $1,263.40 from pension). Additionally, the Magistrate made the following findings and recommendations at pages 4-6 of the report:
 * * * An analysis of the itemized time sheets submitted by Phillip Lawrence (attached to his Application) lists several entries which the Magistrate finds to be unnecessary or excessive. Since the Guardianship Application was withdrawn by Phillip Lawrence at trial, the Magistrate finds that 5.00 hours billed for June 16, 2000 for trial should be disallowed as having no benefit to the conservatorship and completely unnecessary since two other Guardianship Applications were filed. Additionally, 4.00 hours are billed for a guardianship trial on April 28, 2000; however, the Court docket reflects that the trial was continued.
 The Magistrate considers the charges for March 28, 2000 (5.00 hours for hearings on Motions to Expend Funds and meetings at University Hospital) and the charge for March 13, 2000 (3.00 hours for telephone calls in preparation of budget papers) to be excessive.
 The Magistrate recommends that these later two entries be reduced by 50% or a total of 4.00 hours. In deducting the 13.00 hours disallowed or reduced hours from those itemized, the Application yields 45.10 hours which the Magistrate recommends be Granted at the rate of $100.00 per hour, for a total of $4,510.00. This recommendation reflects the limited resources of the guardianship ($5,000.00 plus monthly income) along with the short period of time in which Phillip Lawrence served as Successor Conservator (approximately five months). The initial Conservator, Nelli Johnson, served for approximately seventeen months and received $3,031.00 at an hourly rate of $75.00 per hour.
 Attorney Michael Thomas appeared at the hearing on behalf of Leroy Murad. Mr. Thomas objected to the Lawrence fees as excessive and the Flaherty fees as unnecessary, duplicative and excessive.
 In applying the law as set forth above, the Magistrate recommends that the Application for Attorney Fees filed on behalf of James Flaherty be DENIED except for 7.00 hours allowed as itemized on March 16, 2000 and March 21, 2000 which represent conferences relating to and drafting a Will on behalf of Leory (sic) Murad. Presumably, these services were rendered at the request of Leroy Murad.
 The Magistrate is extending the benefit of the doubt concerning competency since the Will was prepared approximately three weeks prior to Phillip Lawrence filing an Application alleging that Leroy Murad, the purported Testator, was incompetent.
 The Magistrate is further cognizant that the Successor Conservator, Phillip Lawrence, is an attorney who was charging at attorney rates. If he was unable to serve as a conservator and an attorney, he should have considered resigning rather than hiring another lawyer [James Flaherty] to perform services for a financial estate which could not support two attorneys. The Magistrate is unpersuaded by James Flaherty's suggestion of payment of the attorney fees (which would total in excess of $12,000.00 if completely allowed) in monthly installments of $200.00 until paid and secured by a claim against the Estate of Leroy Murad in the event he died prior to full payment. The Magistrate cannot find the services rendered by James Flaherty to be either necessary or beneficial when analyzed in terms of the Conservator providing services for the same basic functions.
 Phillip Lawrence can pay a portion of his conservator fees to James Flaherty for some of the services rendered.
 THEREFORE, the Magistrate recommends that the Application for Attorney Fees filed by Phillip Lawrence be ALLOWED in the amount of $4,510.00 and the Application for Attorney Fees filed by James Flaherty be ALLOWED to the extent of $700.00.
* * *
A copy of this Magistrate's report was mailed to the parties on September 5, 2000. On September 13, 2000, conservator Lawrence filed a motion seeking allegedly omitted or misinterpreted essential findings in the Magistrate's report pursuant to Civ.R. 52. Generally, the movant, at page 6 of his motion, sought the following relief:
 * * * Phillip Lawrence herewith requests that the missing essential Findings, as to the Attorney fees be provided pursuant to Civil Rule 52, as related to the requirement that an Attorney serving as Conservator must perform his own legal services, and the matters related to FINDINGS as to whether the work was done at all, and FINDINGS as to whether the services were reasonable under the circumstances, and FINDINGS as to whether the fees were reasonable, and FINDINGS as to whether such services were for the benefit of the Ward.
 Also, FINDINGS to support the statement that the services of BOTH had been duplicated, and FINDINGS as to why the suggestion that the fees, in light of the financial status of the Ward, be paid by the new Conservator Baron, in such installments as is practical under the financial circumstances.
Also on September 13, 2000, conservator Lawrence filed objections to the Magistrate's report, essentially duplicating his argument contained in his motion filed that same date which sought amended findings by the Magistrate.
On October 4, 2000, Mark Murad, the son of the ward, filed a brief in opposition to conservator Lawrence's objections, arguing that the Magistrate's report and recommendations should be affirmed by the trial court.
On October 12, 2000, the trial court made the judgments which are the orders appealed from by conservator Lawrence. The notice of appeal from these final orders was filed on November 13, 2000.[4]
Appellant Lawrence presents three assignments of error for review.[5]
The assignments will be discussed jointly since each assignment argues whether the trial court abused its discretion in failing to provide the appellant's requested amended findings of fact from the Magistrate.
 I IT IS ERROR OF LAW AND AN ABUSE OF DISCRETION FOR A COURT TO REFUSE TO ORDER FINDINGS ON REQUEST, AND TO ADOPT A MAGISTRATE REPORT WHICH DOES NOT . . . ARTICULATE AN ADEQUATE BASIS UPON WHICH A PARTY CAN MOUNT A CHALLENGE TO, AND THE APPELLATE COURT CAN MAKE A DETERMINATION AS TO THE PROPRIETY OF, RESOLVED DISPUTED ISSUES OF FACT, AND THE TRIAL COURTS (sic) APPLICATION OF THE LAW. (sic)
 II IT IS AN ERROR OF LAW AND AN ABUSE OF DISCRETION FOR A COURT TO REFUSE TO PRODUCE REQUESTED FINDINGS ON THE MATTER IN ISSUE, BASED ON AN ERRONEOUS STATEMENT THAT THE MAGISTRATE REPORT HAS SUFFICIENT FINDINGS TO SATISFY THE RULE, WHEN THAT REPORT IN FACT HAS NO FINDINGS RELATED TO THE MATTER IN ISSUE, AND CONTAINS ONLY A SERIES OF RANDOM AND MISCELLANEOUS FINDINGS ON MATTERS NOT RELATED TO THE ISSUE.
 III IT IS ERROR OF LAW AND AN ABUSE OF DISCRETION FOR A COURT TO REFUSE TO PRODUCE REQUESTED FINDINGS OF FACT AND LAW PURSUANT TO CIVIL RULE 52, UPON THE SWANSON v. SWANSON RULES AND STANDARDS AS IT APPLIES TO A REQUEST FOR ATTORNEY FEES.
Reviewing the appellant's brief, it is noted that the argument section, see appellant's brief at 13-20, contains no separate argument relating to any of the assignments. Instead, the argument section is a melange with no reference to any particular assignment, intermixing the general subject matter of the stated assignments with various citations to authority. App.R. 16(A)(7) provides that the appellant's brief must contain the following:
 (7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review * * *.
(Italicization added.)
App.R. 12(A)(2) provides the following:
 (2) The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).
(Italicization added.)
The appellant's brief herein is patently defective in that the assignments presented for review are not separately argued in violation of App.R. 16(A)(7). Accordingly, the assignments need not be considered and are overruled pursuant to App.R. 12(A)(2). See State v. Wilson (Mar. 8, 2001), Cuyahoga App. No. 77758, unreported, 2001 Ohio App. LEXIS 983 at 21-22, motion for delayed appeal overruled in 2001 Ohio App. LEXIS 1786 (pro se appellant's three assignments not considered and overruled pursuant to App.R. 12[A][2] and 16[A][7] because such assignments were not separately argued); also see North Coast Cookies, Inc. v. Sweet Temptations, Inc.(Cuyahoga, 1984), 16 Ohio App.3d 342, 343-344
(assignments not separately argued may be disregarded).
Assignments overruled.
It is ordered that appellee recover of appellant his costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Probate Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
KENNETH A. ROCCO, P.J. and JAMES J. SWEENEY, J., CONCUR.
[1] This monthly expenditure included a monthly mortgage payment of $970.
[2] In the Magistrate's report filed on September 5, 2000, it is noted that three guardianship applications were filed (one each by Phillip Lawrence, Elizabeth Ramsey, and John Murad). At the June 15, 2000 hearing on these competing guardianship applications, attorney Lawrence withdrew his application, the trial court denied the remaining two applications, and appointed attorney Baron as guardian of Leroy Murad.
[3] As noted by the Magistrate, no transcript of the July 26, 2000 hearing proceedings was taken.
[4] No appellate brief has been filed by appellee(s).
[5] It is noted that appellant's brief is a non-conforming brief in that its font size is 10 point type and the typing is no more than 1/ spaced. App.R. 19(A) requires at least 12 point type and double-spacing between each line. In the future, in order to avoid having a non-conforming brief stricken from the file and incurring additional time and expense in providing a conforming brief to the court, counsel is urged to grace this court with briefs which comply with all rules of court.