OPINION
{¶ 1} The defendant-appellant, Thomas J. Moyar ("Moyar"), appeals the Auglaize County Common Pleas Court's judgment of conviction.
 {¶ 2} On September 20, 2005, two officers from the St. Mary's Police Department arrested Chad Slife ("Slife") pursuant to a drug trafficking indictment issued by the Auglaize County Grand Jury. When he was questioned at the police department, Slife volunteered information concerning Moyar. Specifically, Slife informed the police that Moyar, accompanied by Lori Storer ("Storer") and Theresa Cornwell ("Cornwell"), had traveled to Dayton, Ohio to purchase heroin and bring it back to St. Mary's. Slife provided names, addresses, and times, and he indicated that they were traveling in either a blue Ford Aerostar van or a black and yellow van. Based on this information, the police and county sheriff set up surveillance at Moyar's residence.
 {¶ 3} At approximately 8:00 p.m., the officers observed the blue van parked in front of Moyar's residence and Storer and Cornwell standing on the sidewalk. The yellow and black van was parked on a side street nearby. Eventually, Cornwell drove away in the yellow and black van. She was later stopped by one of the officers.[1] Cornwell consented to a vehicle search, and officers seized a cellophane package containing Xanax from the van. Upon questioning, Cornwell admitted that Storer had driven her and Moyar to Dayton. Cornwell stated that while in Dayton, Moyar left the van and met with "a black guy". She stated she had seen Moyar with a "wad of cash" and observed Moyar exchange the cash for drugs. Cornwell told the officer Moyar received three baggies of heroin. She believed the drug was heroin because it was light brown, she had snorted some of it, and she had observed Moyar "shoot up". Cornwell stated she believed Moyar put the baggies in his pants pocket and carried them into his residence.
 {¶ 4} Around midnight, the officers obtained a search warrant based on this information. Approximately one hour later, a law enforcement team executed the warrant. Michael Bayman ("Bayman") opened the door and allowed entry. Bayman, Moyar, and Storer were handcuffed and placed in patrol cars during the search. Storer confirmed that she had driven Moyar and Cornwell to Dayton, but made no other statement. From the only bedroom located in the residence, the officers seized multiple syringes, a rock of crack cocaine, a white bottle cap with brown residue in it, several crack pipes containing marijuana seeds and rocks used to clean the pipes, and multiple clear pill capsules containing brown residue. From Storer's purse, the officers recovered two syringes. Officers seized similar evidence from the kitchen and seized a "Chore Boy" or "Charboy" brillo pad and a syringe cap from Moyar's person.
 {¶ 5} Moyar was arrested for possession of crack cocaine. The officers indicated that Moyar was "very unstable" on his feet, acted slow and sluggish, and appeared to be under the influence of some drug so they transported him to a hospital prior to incarceration. Based on all of the information gathered that night, a second warrant was issued, and the police obtained blood and urine samples from Moyar in the early afternoon on September 21, 2005. Chemical testing on the blood and urine established the presence of cocaine and heroin in Moyar's system.
 {¶ 6} On October 6, 2005, the Auglaize County Grand Jury indicted Moyar on one count of possession of cocaine, a violation of R.C. 2925.11(A); (C)(4)(a), a fifth degree felony; one count of possession of heroin, a violation of R.C. 2925.11(A); (C)(6)(a), a fifth degree felony; and one count of possession of drug paraphernalia, a violation of R.C. 2925.14(C)(1), a fourth degree misdemeanor. On November 18, 2005, Moyar filed a motion to suppress. The court held a suppression hearing on December 6, 2006, and overruled the motion on January 5, 2006. Moyar filed a motion in limine on January 26, 2006. The court held a hearing on the motion in limine on February 1, 2006 and overruled the motion in a judgment entry filed on February 3, 2006. A jury trial began on February 2, 2006; however, trial was interrupted during voir dire due to "a serious medical situation involving an immediate family member" of the court. The prospective jurors were called back on February 27, and trial commenced with a visiting judge. At that time, Moyar made an oral motion to dismiss the indictment based on a speedy trial violation, which the court overruled. The State presented testimony from nine witnesses, including Patrolman Jacob Sutton ("Sutton") of the St. Mary's Police Department; Gary Shaffer ("Shaffer"), a forensic chemist; and Heather Wogoman ("Wogoman"), a forensic toxicologist. Moyar cross-examined the State's witnesses, but did not present a case in chief. On February 28, 2006, the jury found Moyar guilty of each offense, and the trial court filed its judgment entry. On April 7, 2006, the trial court imposed two twelve-month sentences for the fifth degree felonies and a six-month sentence for the fourth degree misdemeanor to be served concurrently; an aggregate sentence of twelve months. Moyar appeals his conviction and asserts the following assignments of error:
The trial court erred to the substantial prejudice of thedefendant-appellant in overruling Appellant's motion foracquittal of felony charges of possession of cocaine andpossession of heroin and the misdemeanor charge of possession ofdrug paraphernalia; nor was the evidence adduced at trialsufficient to support the jury verdict of guilty of the chargesof possession of cocaine, possession of heroin and possession ofdrug paraphernalia.
 The trial court erred to the substantial prejudice of thedefendant-appellant in overruling each of thedefendant-appellant's three pretrial motions including his motionto suppress evidence derived from the search of his residence andpermitting the drawing of his blood and urine for drug testingpurposes; his motion in limine seeking to prevent the State's useof the alternative theory of possession of cocaine and heroin byvirtue of having these substances in his blood and urine; and hismotion to dismiss the indictment for failure to timely bring himto trial. 
 {¶ 7} For ease of analysis, we elect to address the assignments of error out of order. In the second assignment of error, Moyar contends that his counsel reviewed the record and "has concluded the trial court acted correctly in denying [the] Motion to Suppress, [the] Motion in Limine and [the] Motion to Dismiss the Indictment for failure to timely bring defendant to trial." However, Moyar requests that we "carefully review the record" to determine for ourselves whether he was denied a fair trial. In response, the State of Ohio ("State") contends the second assignment of error is an attempt to appeal under Andersv. California (1967), 386 U.S. 738, 87 S.Ct. 1396,18 L.Ed.2d 493. The State also presented factual and legal arguments to support the trial court's rulings.
 {¶ 8} Despite the State's contention, the brief and request of Moyar's counsel are insufficient and inconsistent to establish an Anders appeal. See Smith v. Robbins (2000), 528 U.S. 259,120 S.Ct. 746, 145 L.Ed.2d 756; McCoy v. Court of Appeals ofWisconsin, Dist. 1 (1988), 486 U.S. 429, 108 S.Ct. 1895,100 L.Ed.2d 440; and Penson v. Ohio (1988), 488 U.S. 75,109 S.Ct. 346, 102 L.Ed.2d 300. Furthermore, Moyar has failed to comply with App.R. 16(A)(7), which provides that an appellant "shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." See also Loc.R.7(A).
 {¶ 9} The appellant bears the burden of demonstrating error on appeal. State v. Chilcutt, 3rd Dist. Nos. 3-03-16 and 3-03-17, 2003-Ohio-6705, at ¶ 6 (citing State ex rel. Fulton v.Halliday (1944), 142 Ohio St. 548, 53 N.E.2d 521). Pursuant to App.R. 12, we must "determine the merits of an appeal on the `assignments of error' which should designate the specific rulings that the appellant challenges." Id. (citing North CoastCookies, Inc. v. Sweet Temptations, Inc. (1984)16 Ohio App.3d 342, 476 N.E.2d 388). We may disregard any assignment of error if the appellant "fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." Id. See also App.R. 12(A)(2).
 {¶ 10} The second assignment of error is essentially a conglomeration of three separate assignments of error. However, Moyar has made no attempt to indicate the legal basis upon which any alleged error is premised or to identify where in the record the alleged error occurred. At best, we are confronted with approximately one-half of a page of "argument", which urges us to "carefully review the record" to determine whether the trial court's judgments "constituted substantial prejudice to defendant's right to a fair trial". While pro se litigants may be granted a certain degree of latitude on these issues, Moyar is represented by appellate counsel who has found no error. We are not inclined to scour the record in order to create moot arguments merely to discuss and reject those arguments on Moyar's behalf. The second assignment of error is overruled.
 {¶ 11} In the first assignment of error, Moyar contends the trial court erred in overruling his Crim.R. 29 motions made at the close of the State's case and at the close of his case. Second, Moyar contends the evidence is insufficient to support the jury's verdict. In response, the State contends that the evidence "overwhelmingly" supports the conviction.
 {¶ 12} Although Moyar asserts two arguments, we can consider them together because "[a] motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." State v.Tenace, 109 Ohio St. 3d 255, 2006-Ohio-2417, 847 N.E.2d 386, at ¶ 37 (citing State v. Carter, 72 Ohio St.3d 545, 553,1995-Ohio-104, 651 N.E.2d 965; State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541).
In reviewing a record for sufficiency, "[t]he relevant inquiryis whether, after viewing the evidence in a light most favorableto the prosecution, any rational trier of fact could have foundthe essential elements of the crime proven beyond a reasonabledoubt." * * * "[T]he weight to be given the evidence and thecredibility of the witnesses are primarily for the trier of thefacts." 
Id. at ¶ 37 (quoting State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, followingJackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781,61 L.Ed.2d 560; State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus).
 {¶ 13} R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance", and R.C. 2925.14(C)(1) provides that "[n]o person shall knowingly use, or possess with purpose to use, drug paraphernalia." Essentially, Moyar contends the State did not prove beyond a reasonable doubt that he "knowingly" obtained, possessed, or used cocaine and heroin. Moyar contends there is no evidence to show when, where, or how he ingested cocaine and heroin. However, we have previously held that "`possession'" may: (a) take the form of constructive possession; (b) be proven by circumstantial evidence alone; or (c) may occur either through individual or joint possession." State v. Maag, 3rd Dist. No. 5-03-32,2005-Ohio-3761, at ¶ 33 (citing State v. Kelch, 12th Dist. No. CA2002-02-003, 2002-Ohio-6875; State v. Gibson (May 6, 1998), Summit App. No. 18540, unreported). Furthermore, "the state is not required to prove the depth of the accused's `knowledge,' rather, as provided by R.C. 2901.22(B): `a person actsknowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstanceswhen he is aware that such circumstances probably exist.'" (Emphasis sic). Id.
 {¶ 14} Contrary to Moyar's contentions, in this case, the "when, where, and how" of ingestion is not required in order for the jury to find that he possessed cocaine and heroin beyond a reasonable doubt. The testimony indicates that the search warrant was executed at Moyar's residence. Inside the house, the search focused on the kitchen and the upstairs bedroom, which was the only bedroom in the home. Hanging on the bedroom wall was a wooden decoration, which displayed the name "MoJo". Several officers testified based on personal knowledge that "MoJo" and "Chief" are nicknames commonly used by Moyar. The officers searched the dresser located in the bedroom. Inside the top two dresser drawers, they recovered a wallet, which contained Moyar's state issued photo identification, and hemostats, which are medical devices Moyar is required to use due to a medical condition with his trachea. The officers also recovered prescription medication bottles bearing Moyar's name. One of the officers testified that evidence of possession was clear based on the photo identification, the hemostats, the prescription bottles, and the wall decoration.
 {¶ 15} From the dresser, the police recovered a rock of crack cocaine; hypodermic needles, some of which had caps with a brown residue on them; a piece of glass with brown residue on it; lighters; materials that may be used as filters in smoking cocaine and heroin; a box labeled "Don't Touch", which contained marijuana wrapping paper; clear pill capsules with brown residue in them; a film container with marijuana seeds in it; and a glass pipe with a rose in the end, which Sutton testified could be used to smoke drugs if the rose was removed.
 {¶ 16} From Moyar's person, the police seized a "Chore Boy" or "Charboy" brillo pad, which Sutton testified can be used as a filter in smoking drugs, and a syringe cap. The police also seized evidence from the kitchen including clear pill capsules with brown residue and hypodermic needles. Sutton also testified that the clear pill capsules are generally used in connection with heroin and other powder forms of illegal drugs.
 {¶ 17} In his expert opinion, Shaffer testified that the white rock seized from the dresser drawer was .05 grams of crack cocaine, and that the brown residue found on some of the evidence was heroin. Likewise, Wogoman analyzed Moyar's blood and urine samples and concluded, based on her expert opinion, that they contained cocaine and heroin.
 {¶ 18} Construing the evidence in favor of the State, and based on this record, the evidence is sufficient to support the jury's verdict. We also find no error in the trial court's orders overruling the Crim.R. 29 motions. The first assignment of error is overruled.
 {¶ 19} The judgment of the Auglaize County Common Pleas Court is affirmed.
Judgment affirmed.
 ROGERS and SHAW, JJ., concur.
[1] Moyar's brief notes, "Officer Sutton personally knew Ms. Cornwell did not have an operator's license and for that reason, Officer Sutton approached Ms. Cornwell after she had stopped at a nearby gas station." Appellant's Br., Jul. 17, 2006, at 2.