OPINION
{¶ 1} Appellant appeals his conviction and sentence entered in the Coshocton County Common Pleas Court on one count of endangering children.
 {¶ 2} Appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} On April 23, 2004, Defendant/Appellant was indicted for one count of Endangering Children, R.C. 2919.22(B)(1)(E)(2)(d), Second Degree Felony.
 {¶ 4} Such charge arose out of the following:
 {¶ 5} Appellant lived with his girlfriend Melissa Merck, the mother of Shalcey Rickey.
 {¶ 6} On February 18, 2004, Shalcey Rickey, then seven months old, was left alone with Appellant Michael A. Rickey, II for approximately 15 minutes while Ms. Merck left to pick up a babysitter. (T. at 122, 133).
 {¶ 7} While Ms. Merck was in route to get the babysitter, Appellant called 911 and indicated that the child had stopped breathing and that the child's eyes had rolled back into her head.
 {¶ 8} Appellant was directed by 911 operators to give the child chest compressions. Medical records indicate that approximately 15 compressions were given but no breaths.
 {¶ 9} Ms. Merck then returned home and immediately thereafter an emergency medical team arrived on the scene. Shalcey Merck was transported and admitted to the emergency room of Coshocton Memorial Hospital.
 {¶ 10} The emergency room records from Coshocton Memorial Hospital indicated that there was no external bruising on Shalcey. A CT scan of her head and body did not indicate what was wrong. Based on the statements of Appellant as to what had happened, the hospital followed its standard protocols and conducted a spinal tap to rule out possible meningitis. Because of the child's size, no anesthetic could be used and the child was held down while a needle was inserted in the child's spinal column and fluid was withdrawn. The hospital ruled out a diagnosis of meningitis.
 {¶ 11} Because the exact cause of Shalcey's condition could not be determined, the child was transferred immediately to the emergency room of Akron Children's Hospital. Medical records indicated that the child vomited and wretched profusely in the waiting room at the hospital. An MRI of the head and body cavity of the child found evidence of both old and new subdural hematomas and evidence of a genetic bone defect. Retinal hemorrhages were also discovered. Authorities from Akron's Children Hospital almost immediately suspected abuse without taking into account past medical records indicating a history of falls.
 {¶ 12} On May 24, 2004, Appellant was transported from the Stark Regional Community Correction Center for Arraignment and entered a plea of Not Guilty in the presence of counsel.
 {¶ 13} On June 4, 2004, Attorney W. Todd Drown was appointed to represent Appellant.
 {¶ 14} On July 28, 2004, by court order, Dr. Stephen Guertin, M.D. was approved as an expert for the Appellant.
 {¶ 15} The trial in this matter was originally scheduled for November 16, 2004, but was continued to January 11, 2005, at the request of Appellant.
 {¶ 16} Appellant failed to appear for trial on January 11, 2005, and a warrant was issued for his arrest.
 {¶ 17} On February 15, 2005, Appellant was taken into custody, and the trial was rescheduled for March 29, 2005.
 {¶ 18} On March 28, 2005, Appellant was transported from the Orient Correctional Institution to the Coshocton County Justice Center, so that he could be available for trial.
 {¶ 19} The case proceeded to trial on March 29 and 30, 2005.
 {¶ 20} By video deposition, Dr. Stephen Guertin, an expert in pediatric critical care, testified that either the chest compressions performed by Appellant or the child's violent vomiting could have increased the child's intracranial pressure in the brain and created the retinal hemorrhages. Dr. Guertin also testified that the child definitely had an old hematoma likely caused by a fall that would have predated the alleged incident date. Dr. Guertin testified that the old hematoma likely spontaneously re-bled and would have led to the exact symptoms that Appellant indicated he saw that caused him to call 911. Dr. Guertin testified that such a re-bleed can be caused by no action at all, or even the slightest, non-abusive, handling of a child.
 {¶ 21} Dr. Guertin also testified that the blood in the child's spinal column was caused by the spinal tap and was not a result of any alleged violent activity upon the child. Dr. Guertin further testified that the child had a congenital defect of her skeletal system that was in no way related to the alleged incident of abuse.
 {¶ 22} Evidence was presented in the form of medical records from Akron Children's Hospital dated February 19, 2005, indicating that the child had a seizure while in the Hospital's care similar to that described by Appellant on February 18, 2004. (T. at 145-146).
 {¶ 23} Sabrina Holmes testified that while she had been watching Shalcey on December 22, 2003, just a few weeks prior to the alleged incident, Shalcey became listless and stopped breathing for no reason. (T. at 191-192). The child was taken to the emergency room at Coshocton Memorial Hospital for observation on that prior occasion. No abuse was suspected as a result of the December 22, 2003 incident.
 {¶ 24} Dr. Steiner, the Prosecution's medical expert, testified that Shalcey had a brain sheer injury, retinal hemorrhages, and injuries to her lower back. Dr. Steiner opined that Shalcey's injuries were the result of a condition commonly known as shaken baby syndrome and were the result of deliberate and intentional trauma. Dr. Steiner ruled out the possibility of non-intentional or accidental trauma as a cause of the injuries. Like Dr. Guertin, Dr. Steiner did agree that Shalcey had an old hematoma that pre-dated the alleged incident.
 {¶ 25} During interviews with a hospital social worker and a Coshocton County Sheriff's Detective, Appellant attempted to explain that he had left Shalcey alone on a couch for a brief moment, and when he returned, he found that Shalcey had stopped breathing and that her eyes were rolled back. (T. at 172-173, 204). Appellant then went on to explain that he had gently shaken Shalcey to see if she would start breathing. (T. at 173, 204).
 {¶ 26} At trial, Dr. Richard Daryl Steiner, Akron Children's Hospital, testified that Shalcey was admitted for care in the intensive care unit of Akron Children's Hospital, and that his evaluation led to the conclusion that Shalcey suffered harm in the form of bleeding over the surface of her brain, and the loss of brain tissue that died when it was sheared from her brain. Steiner also testified that he observed extensive hemorrhage of the retina, with bleeding on the surface and within the retina, as well as soft tissue and muscle injuries to the lower spine. (T. at 221, 223). After ruling out causes such as motor vehicle crashes and falls from great heights, Steiner concluded that Shalcey's injuries were caused by abuse that is ordinarily referred to as Shaken Baby Syndrome. (T. at P. 227, L. 7 to L. 25). This is accomplished by grabbing a baby and shaking it violently back and forth as hard as possible. (T. at 229).
 {¶ 27} At the conclusion of trial, after deliberations, the jury returned a verdict of guilty as charged. The matter was then referred for pre-sentence investigation.
 {¶ 28} On May 16, 2005, Appellant was transported from the Tuscarawas County Justice Center for sentencing.
 {¶ 29} The trial court ordered Appellant to serve seven (7) years incarceration in a State Penal Institution.
 {¶ 30} It is from this conviction and sentence that Appellant now appeals, assigning the following errors:
 ASSIGNMENTS OF ERROR {¶ 31} "I. THE COURT ABUSED ITS DISCRETION BY NOT SUSTAINING DEFENDANT'S OBJECTION AND MOTION FOR A MISTRIAL REGARDING THE INTRODUCTION OF INADMISSIBLE EVIDENCE. IN THE ALTERNATIVE, THE COURT ABUSED ITS DISCRETION BY NOT GIVING A LIMITING INSTRUCTION.
 {¶ 32} "II. THE COURT ERRED BY ENTERING A JUDGMENT WHICH WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE.
 {¶ 33} "III. THE COURT ERRED BY ENTERING A JUDGMENT WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 34} While Appellant did set out separate assignments of error on Page 4 of his brief, Appellant did not set forth separate arguments as required by App. R. 16(A). We may disregard any assignment of error if the appellant fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App. R. 16(A)." North Coast Cookies, Inc.v. Sweet Temptations, Inc. (1984) 16 Ohio App.3d 342, 476 N.E.2d 388.
 I. {¶ 35} In his first assignment of error, Appellant argues that the trial court abused its discretion in overruling his objection, denying his motion for a mistrial and in failing to give a limiting instruction. We disagree
 {¶ 36} Appellant specifically argues that the trial court erred in permitting the State, over objection, to admit evidence of low back injuries based on the trial court's ruling on a motion in limine concerning same. Appellant further argues that the trial court should have issued a limiting instruction as to such issue.
 {¶ 37} Appellant argues that during the trial, the "State of Ohio hinted to the jury on two occasions about an injury to the low back during its case in chief." (T. at 222-223, 236). Appellant's counsel objected to such statement but the Court declined to see the Prosecution's statements as a violation of its limiting instruction. (T. at 223-225). Appellant claims that the jury was presented with statements from Dr. Steiner and the Prosecution that there were low back injuries to the child in violation of the ruling on the motion in limine.
 {¶ 38} Upon review of Appellant's motion in limine, we find that same contained two branches. The first branch asked the trial court for an order prohibiting the state from eliciting testimony about any alleged abuse of Appellant's wife and child other than that which is alleged to have occurred February 18th, 2004, the date recited in the single count of the indictment. This branch of said motion was not opposed by the State and the trial court sustained same.
 {¶ 39} The second branch of Appellant's motion in limine concerned testimony with regard to any low back injuries or fractures sustained by the child based on the fact that Appellant's counsel did not timely receive the medical records concerning such injuries.
 {¶ 40} Initially, upon ruling on such, the trial court held "that the State of Ohio's prohibited from eliciting testimony regarding a supposed fracture, spine fracture of the child and all records indicating that there was such a fracture." (T. at 3).
 {¶ 41} However, upon further consideration, the trial court narrowed such ruling to only exclude testimony as to evidence of an MRI, CT or X-ray showing a fracture or low back injury, not testimony of a back injury or fracture if there was independent basis for same. (T. at 16-18).
 {¶ 42} Upon objection to Dr. Steiner's testimony as to trauma to the child's lower back, the trial court found that such testimony did not violate the spirit of the letter of his ruling on the motion in limine.
 {¶ 43} Initially, we must not that a motion in limine is a precautionary request, directed to the inherent discretion of the trial judge, to limit the examination of witnesses by opposing counsel in a specified area until its admissibility is determined by the court outside of the presence of the jury. The sustaining of a motion in limine does not determine the admissibility of the evidence to which it is directed. Rather it is only a preliminary interlocutory order precluding questions being asked in a certain area until the court can determine from the total circumstances of the case whether the evidence would be admissible. * * * ". State v. Leslie (1984),14 Ohio App.3d 343, 471 N.E.2d 503.
 {¶ 44} "Thus, a motion in limine, if granted, is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue. In virtually all circumstances finality does not attach when the motion is granted. Therefore, should circumstances subsequently develop at trial, the trial court is certainly at liberty "* * * to consider the admissibility of the disputed evidence in its actual context." State v. White (1982),6 Ohio App.3d 1, at 4, 451 N.E.2d 533.
 {¶ 45} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,180, 510 N.E.2d 343. As a general rule, all relevant evidence is admissible. Evid. R. 402. Therefore, our task is to look at the totality of the circumstances in the particular case under appeal, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in
allowing or excluding the disputed evidence. State v. Oman (Feb. 14, 2000), Stark App. No. 1 999CA00027. We will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 46} Upon review, based on the foregoing, we find the trial court did not abuse its discretion by admitting Dr. Steiner's testimony into evidence. Said testimony concerned evidence of soft tissue injury and bleeding, not a spinal fracture.
 {¶ 47} For the same reasons, the trial court did not err in overruling Appellant's objection or in not giving a limiting instruction as to such testimony.
 {¶ 48} Appellant's first assignment of error is overruled.
 II., III. {¶ 49} In his second and third assignments of error, Appellant argues that the evidence presented at trial was insufficient to support his conviction and was against the manifest weight of the evidence. We disagree.
 {¶ 50} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational truer of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 51} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine Awhether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 52} Appellant was convicted of one count of child endangering in violation of R.C. 2919.22(B)(1)(E)(2)(d), a second degree felony, which states in pertinent part:
 {¶ 53} "(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
 {¶ 54} ("1) Abuse the child;
 {¶ 55} "(E)(1) Whoever violates this section is guilty of endangering children.
 {¶ 56} "(2) If the offender violates division (A) or (B)(1) of this section, endangering children is one of the following:
 {¶ 57} "(d) If the violation is a violation of division (B)(1) of this section and results in serious physical harm to the child involved, a felony of the second degree."
 {¶ 58} At trial, the State presented evidence in the form of testimony from several witnesses. The child's mother, Malissa Merck, testified that when she left to go pick up the babysitter the child was fine and when she returned the child was not fine.
 {¶ 59} Michelle Mizda, a social worker with Akron Children's Hospital, testified that Appellant told her that he shook the child.
 {¶ 60} Sabrina Holmes, the family babysitter, testified that on a prior occasion the child was crying very hard and stopped breathing for a short period of time, but that the child came back around after being patted on the back. She also testified that she was with Malissa Merck on the night in question.
 {¶ 61} Deputy Tim Bethel, the investigating officer, testified as to his observations of and his discussions with Appellant.
 {¶ 62} The jury also heard testimony from Dr. Daryl Steiner, the child's treating physician, with regard to her injuries and his opinion as to how such injuries were sustained.
 {¶ 63} Based on the foregoing, we do not find that the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed nor do we find, as a matter of law, that appellant's conviction was based upon insufficient evidence.
 {¶ 64} Appellant's second and third assignments of error are overruled.
 {¶ 65} For the foregoing reasons, the judgment of the Court of Common Pleas of Coshocton County, Ohio, is hereby affirmed.
By: Boggins, J.
Wise, P.J. and
Farmer, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Coshocton County, Ohio, is affirmed. Costs assessed to appellant.