# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PARMA VTA LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N22C-03-092 AML |
| | ) | CCLD |
| PARMA GE 7400, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Upon Defendant's Motion to Dismiss: **DENIED**

Submitted: September 9, 2022
Decided: December 16, 2022

Catherine A. Gaul, Esq., and Michael J. Vail, Esq. of ASHBY & GEDDES, Wilmington, Delaware; Mark I. Wallach, Esq. of WALTER HAVERFIELD, Cleveland, Ohio, *Attorneys for Plaintiff Parma VTA LLC.*

John A. Sensing, Esq., and Brandon R. Harper, Esq. of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Eric H. Zagrans, Esq. of ZAGRANS LAW FIRM LLC, Columbus, Ohio, *Attorneys for Defendant Parma GE 7400, LLC.*

**LeGrow, J.**

The parties to this action entered into an agreement to acquire a commercial property in Ohio and hold it as tenants in common. When they purchased the property, it was encumbered by a mortgage. Each party assumed its share of the mortgage in proportion to its interest in the property. Eventually, the original mortgage came due. At that time, Plaintiff refinanced the mortgage to save the property from foreclosure. When that second mortgage matured, Plaintiff made cash calls to Defendant. Defendant never paid, but acknowledged its obligations under the mortgage and the cash calls. After paying off the mortgage entirely, Plaintiff filed this action. There is ongoing litigation in Ohio between these parties arising from the same series of events.

In its Delaware complaint, Plaintiff brought a breach of contract claim and, in the alternative, claims for unjust enrichment and promissory estoppel. In the current motion, Defendant asks the Court to dismiss all of Plaintiff's claims. For the reasons that follow, I deny Defendant's motion to dismiss the breach of contract claim because Plaintiff has adequately pleaded a breach of contract claim under the parties' agreement. Additionally, I conclude Plaintiff has pleaded both unjust enrichment and promissory estoppel as alternative claims if the Court later finds the parties' agreement unenforceable. Therefore, the motion to dismiss is denied.

## FACTUAL & PROCEDURAL BACKGROUND

The following facts are drawn from the Plaintiff's Amended Complaint and the record in this matter.

### A. Parties

The property at issue in this case is a commercial property in Parma, Ohio, which is leased to Giant Eagle, a grocery store chain (the "Property").[1] Two entities jointly own the Property as tenants in common.[2] One is Plaintiff Parma VTA LLC ("Plaintiff"), a Delaware limited liability company owned by Alan Robbins.[3] The other is Defendant Parma GE 7400, LLC ("Defendant"), a Delaware limited liability company originally owned by Kenneth Gerston and transferred upon his death to Kimberlee Gerston as trustee of the Gerston Family Trust.[4]

### B. The TIC Agreement

On October 4, 2005, Plaintiff and Defendant entered into a Tenants in Common Agreement (the "TIC Agreement") to "provide for the orderly administration of the Property and to delegate authority and responsibility for the operation and management of the Property."[5] Gerston's entity, Defendant, holds a

---

[1] Amended Complaint ("Am. Compl.") ¶¶ 1, 11 (D.I. 11).
[2] *Id.* ¶ 11.
[3] *Id.* ¶ 6; Defendant's Motion to Dismiss ("Def.'s Mot. to Dismiss"), Ex. 1 (Ohio Court Opinion) at 4 (D.I. 15).
[4] Am. Compl. ¶ 7; Def.'s Mot. to Dismiss, Ex. 1 at 3-4.
[5] Am. Compl. ¶ 12, Ex. A (TIC Agreement) at Recital B.

76.62% interest in the Property, while Robbin's entity, Plaintiff, holds a 23.38% interest.[6]

Under the TIC Agreement, Plaintiff is designated as the Property Manager.[7] The Property Manager's duties include:

> [M]anaging the day-to-day operations of the Property . . . paying all expenses of the Tenants in Common with respect to the Property, collecting, receiving and investing (on an interim basis) any cash proceeds received on account of the Property, maintaining the bank account and books and records of the Property, providing the notices to the Tenants in Common required by [Sections] 4.2 and 5.1 of the [TIC] Agreement, disbursing available cash in accordance with [Sections] 3 and 5.2 of the [TIC] Agreement and carrying out such other functions as are reasonably requested.[8]

The TIC Agreement contains a "No Agency" provision, which states that "[n]o Tenant in Common is authorized to act as agent for, to act on behalf of, or to do any act that will bind, any other Tenant in Common, or to incur any obligations with respect to the Property."[9] Moreover, Section 2.1 of the TIC Agreement requires the unanimous approval of both entities for specific actions relating to the Property. It pertinently states:

> Any sale of the entire Property, any lease or re-lease of all or any portion of the Property, any negotiation, re-negotiation and approval of any indebtedness secured by any mortgage or deed of trust recorded

---

[6] *Id.* ¶ 11.
[7] *See id.*, Ex. A § 2.2.
[8] *Id.*
[9] *Id.*, Ex. A §1.4.

against the entire Property, . . . shall require the unanimous approval of all Tenants in Common."[10]

Section 3 of the TIC Agreement provides that the two owners will share the Property's income and expenses in proportion to their ownership interests. It states, in pertinent part:

> [E]ach of the Tenants in Common shall . . . (b) bear, and shall be liable for, payment of all expenses of ownership of the Property, on a gross and not a net basis, including by way of illustration, but not limitation, all operating expenses and expenses of sale or refinancing or condemnation, in proportion to their respective Interests, except for such amounts as may be reasonably determined by the Property Manager to be retained for reserves or improvements."[11]

Section 4.2 of the TIC Agreement further requires the owners to provide additional funds as needed to own, operate, and maintain the property.[12] That Section establishes specific remedies if one of the owners fails to pay such funds after notice by the Property Manager.[13] Section 4.2 states:

> Each Tenant in Common will be responsible for a pro rata share (based on each Tenant in Common's respective Interest) of any future cash needed in connection with the ownership, operation and maintenance of the Property as determined by the Property Manager. To the extent any Tenant in Common fails to pay any funds pursuant to this Section within fifteen (15) days after the Property Manager delivers notice that such additional funds are required, any other Tenant(s) in Common may pay such amount. The nonpaying Tenant in Common shall reimburse the paying Tenant(s) in Common upon demand the amount of any such payments plus interest thereon at the rate of twelve percent (12%) per annum (but not more than the maximum rate allowed by law) until paid.

---

[10] *Id.*, Ex. A § 2.1.
[11] *Id.*, Ex. A § 3.
[12] *See id.* ¶ 34, Ex. A § 4.2.
[13] *See id.*

4

Alternatively, the Property Manager is hereby authorized to pay the Tenant(s) in Common entitled to reimbursement the sums advanced (with interest thereon as provided above) out of future cash from operations or from sale or refinancing of the Property. The remedies against a nonpaying Tenant in Common provided for herein are in addition to any other remedies that may otherwise be available, including by way of illustration, but not limitation, the right to obtain a lien against the Interests of the nonpaying Tenant in Common to the extent allowed by law.[14]

In 2005, as part of the Property acquisition, Robbins and Gerston, through their respective entities, assumed an $8.2 million mortgage loan from the previous owner.[15] In August 2010, Gerston passed away, and his interest in Defendant, and by extension the Property, passed to Kimberlee Gerston as trustee of the Gerston Family Trust.[16]

### C. Original Mortgage Loan and Plaintiff's Refinancing

In April 2014, the original mortgage loan came due, and Plaintiff refinanced the loan with Ladder Capital Finance ("Ladder Capital") to prevent foreclosure and loss of the Property (the "Ladder Mortgage Loan").[17] The Ladder Mortgage Loan was used to satisfy the original mortgage on the Property.[18]

To conduct refinancing, for reasons that are unclear from the Amended Complaint and disputed between the parties, Plaintiff attempted "an ownership

---

[14] *Id.*, Ex. A § 4.2.
[15] *Id.*, Ex. A § 10.15; Def.'s Mot. to Dismiss, Ex. 1 at 5.
[16] *See* Def.'s Mot. to Dismiss, Ex. 1 at 3-4, 8.
[17] Am. Compl. ¶ 15.
[18] *Id.* ¶ 17.

restructuring such that [Plaintiff] became sole owner of the Property, with [Defendant] taking a proportionate 76.62% ownership interest in [Plaintiff]."[19]  In December 2016, an Ohio Court found this attempted "ownership restructuring" void.[20]  On October 10, 2018, that ruling became final when the Ohio Supreme Court denied review.[21]

### D. Ladder Mortgage Loan and Arbitration

The Ladder Mortgage Loan came due on April 6, 2019.[22]  Plaintiff, in its capacity as Property Manager, executed a Forbearance Agreement with Ladder Capital rather than allowing the Ladder Mortgage Loan to go into default.[23]  On March 1, 2019, in connection with an attempt to refinance the Ladder Mortgage Loan, Plaintiff issued a cash call to itself and Defendant to retain transactional legal counsel for $2,500.[24]  Plaintiff's proportional share was $584.50, and Defendant's

---

[19] *Id.* ¶ 16.

[20] *See id.* ¶ 16 n.1; Def.'s Mot. to Dismiss, Ex. 1 at 3-4 (finding that Gerston never transferred his ownership interest in the Property or Defendant, and that any purported transactions allegedly involving Defendant after Gerston's death are "void and of no effect").  The Court may take judicial notice of the ruling of another court; specifically, here, it may take judicial notice of the Ohio Court's findings because they are not subject to reasonable dispute.  *See In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170 (Del. 2006) (noting that, under Court of Chancery Rule 12(b)(6), a court may take judicial notice of facts "*not* subject to reasonable dispute") (emphasis in original) (internal citation omitted); *see also ShotSpotter Inc. v. VICE Media, LLC*, 2022 WL 2373418, at *5 (Del. Super. June 30, 2022) ("Delaware courts have previously taken judicial notice of public records in a motion to dismiss context.").  To this end, the Defendant asks the Court to take judicial notice of the Ohio Court opinion, *see* Def.'s Mot. to Dismiss at 14 n.3, and the Plaintiff conceded at oral argument that the Court may take judicial notice of that opinion.

[21] *See Gerston v. Parma VTA, L.L.C.*, 108 N.E.3d 1104 (Table) (Ohio 2018).

[22] Am. Compl. ¶ 26.

[23] *Id.* ¶ 26.

[24] *Id.* ¶ 23.

6

proportional share was $1,915.50.[25]  Defendant never paid; instead, on April 30, 2019, Plaintiff paid Defendant's share.[26]  On March 3, 2019, the same series of events happened, but this time Plaintiff issued the cash call to retain a certified public accountant.[27]  On March 18, 2019, Plaintiff paid Defendant's share, which was $1,915.50.[28]

On March 12, 2019, Plaintiff issued a cash call to itself and Defendant for a total amount of $6,413,275.53 to pay off the Ladder Mortgage Loan under Section 4.2 of the TIC Agreement.[29]  Plaintiff paid its proportional share, but Defendant did not.[30]  On March 26, 2019, under Section 4.2 of the TIC Agreement, Plaintiff demanded arbitration to determine the effectiveness of its cash call to Defendant.[31]  Plaintiff sought to confirm the validity of the cash call; specifically, whether Defendant was responsible for its proportionate share of the cash call, that share totaling $4,750,440, which was needed to repay the Ladder Mortgage Loan.[32]  On April 6, 2019, the Ladder Mortgage Loan came due, and Plaintiff executed a Forbearance Agreement with Ladder Capital to extend the due date by 30 days in

---

[25] *Id.*
[26] *Id.*
[27] *Id.* ¶ 24.
[28] *Id.*
[29] *Id.* ¶ 25; *see also id.*, Ex. A § 4.2 (stating that each Tenant in Common is "responsible for a pro rata share" of cash required "in connection with ownership, operation and maintenance of the Property").
[30] *Id.* ¶ 25.
[31] *Id.* ¶ 35; *see also id.*, Ex. F (Demand for Arbitration).
[32] *Id.* ¶ 36.

exchange for a lender's fee of $15,957.50 and legal fees of $1,500.[33] On April 23, 2019, Defendant, through counsel, acknowledged its obligation with respect to the cash call.[34] Counsel wrote:

> Kimberlee A. Gerston, owner of [Defendant], hereby acknowledges the obligation of [Defendant] on the Ladder Mortgage Loan dated April 2014 on the Giant Eagle Property and the cash call made by the manager of the TIC [Agreement], subject to her reservation of all claims, entitlements, and setoffs available to her against Alan Robbins, [Plaintiff], AKMS, and Leah Robbins.[35]

On April 24, 2019, in reliance on that acknowledgement, Plaintiff dismissed the arbitration.[36]

On May 6, 2019, Plaintiff, as the Property Manager, paid Ladder Capital $3,226,867.84, which was half the outstanding balance on the Ladder Mortgage Loan, plus another lender's fee and legal fees, in exchange for an additional 30-day extension to repay the Ladder Mortgage Loan.[37] On May 7, 2019, Plaintiff demanded Defendant consent to a lien against its interest in the Property in the

---

[33] *Id.* ¶ 26.

[34] *See id.* ¶ 36.

[35] *Id.*, Ex. B. Additionally, Defendant made representations to the Ohio Court of Appeals to the effect that "the Gerston Trust (owner of [Defendant]) does not disclaim its share of the obligation to Ladder Capital for the refinancing. The Gerston Trust, and thus [Defendant], does not seek to undo the pay-off of the [original loan]." *Id.* ¶ 21. Plaintiff alleges the Ohio Court of Appeals relied on this representation when it concluded Ladder Capital and the original mortgage lender were not necessary parties to the Ohio action. *See id.*

[36] *Id.* ¶ 36.

[37] *Id.* ¶ 30.

amount of $2,476,257.14, which was Defendant's "share of amounts advanced through May 6, 2019."[38]

Defendant did not consent to the lien, and on May 15, 2019, Plaintiff demanded arbitration for a second time to enforce its right to obtain the lien.[39] On May 24, 2019, Plaintiff advanced $2,954,255.84 to repay the Ladder Mortgage Loan, $2,263,550.83 of which was Defendant's share.[40] In total, Plaintiff has advanced $4,815,623 on behalf of Defendant for its share of cash calls "related to repayment of the Ladder Mortgage Loan."[41]

On December 30, 2019, an arbitrator issued a decision finding Plaintiff was entitled to a lien on Defendant's interest in the Property in an amount totaling $4,815,623.26, plus interest.[42] On February 12, 2020, the same arbitrator awarded Plaintiff $105,144.06 in attorney's fees.[43]

### E. Arbitration Decision Vacated on Procedural Grounds

In early 2020, Plaintiff filed actions in the Court of Common Pleas in Cuyahoga County, Ohio to confirm the arbitration awards.[44] On April 24 and October 1, 2020, respectively, Defendant moved to vacate both arbitration awards

---

[38] *Id.* ¶ 37.
[39] *Id.* ¶ 38.
[40] *Id.* ¶ 31.
[41] *Id.* ¶ 33.
[42] *Id.* ¶ 39; *see also id.*, Ex. C (Lien Arbitration Decision).
[43] *Id.* ¶ 39; *see also id.*, Ex. D (Attorney's Fees Arbitration Decision).
[44] *Id.* ¶ 40.

on the ground that Plaintiff waived any right to arbitration because it participated in litigation with Defendant in Ohio.[45] On January 10, 2022, the Ohio Court of Common Pleas granted Defendant's motion to vacate both arbitration awards, agreeing with Defendant that Plaintiff waived its right to seek arbitration under the TIC Agreement by participating in the 2016 Ohio litigation.[46]

**F. Plaintiff's Filing in This Court**

On March 10, 2022, Plaintiff commenced its action against Defendant in this Court, alleging (1) breach of the TIC Agreement, and (2) in the alternative, unjust enrichment.[47] On May 23, 2022, Defendant moved to dismiss both counts.[48] On June 7, 2022, in lieu of filing an answering brief, Plaintiff filed its Amended Complaint. The Amended Complaint alleges claims for (1) breach of contract, (2) unjust enrichment, and (3) promissory estoppel.[49] The unjust enrichment and promissory estoppel claims are pleaded in the alternative to the breach of contract claim. Defendant filed its current Motion to Dismiss on July 22, 2022,[50] Plaintiff

---

[45] *Id.* ¶ 42.
[46] *Id.* ¶ 43; *Id.*, Ex. E (Order to Vacate); *see also Kimberlee A. Gerston v. Parma VTA, LLC, et al.*, Case No. CV-14-829947 (Oh. Com. Pl. Cuyahoga Cnty. Dec. 30, 2016). Plaintiff disputes the Court of Common Pleas' ruling and has filed an appeal. Am Compl. ¶ 44. Plaintiff argues that even if the appeal succeeds and the arbitration decisions are reinstated, this action will not be moot because the remedy sought in arbitration was a lien on the Property, not a money judgment. Without passing on the correctness of Plaintiff's legal position, this Court will await the decision of the Ohio Court before addressing the effect, if any, of that decision.
[47] *See* Complaint ¶¶ 38-55 (D.I. 1).
[48] Defendant's First Motion to Dismiss (D.I. 9).
[49] *See* Am. Compl. ¶¶ 47-70.
[50] *See* Def.'s Mot. to Dismiss.

filed its Opposition thereto on August 19, 2022,[51] and Defendant filed its Reply in further support on August 26, 2022.[52]  The Court heard argument on the Motion to Dismiss on September 9, 2022.[53]

### G. Parties' Contentions

The focus of Defendant's Motion to Dismiss the breach of contract claim is that the Amended Complaint fails to state all the elements of a breach of contract claim under Ohio law.[54]  First, Defendant argues a breach of contract claim requires "performance by [Plaintiff]," and Plaintiff failed to perform because it neither sought nor received Defendant's approval to obtain the Ladder Mortgage Loan on the Property, which the TIC Agreement allegedly required.[55]  Moreover, Defendant argues that any "after-the-fact" words or conduct by Defendant committing to repay its share of the Ladder Mortgage Loan was an "unenforceable gratuitous promise."[56]  This argument challenges the legal significance of the letter from counsel on behalf of Kimberlee Gerston dated April 23, 2019.[57]  Defendant further contends that such a "post hoc 'representation[]' relied on by [Plaintiff]" does not satisfy Ohio's Statute

---

[51] *See* Plaintiff's Answering Brief ("Pl.'s Answering Br.") (D.I. 17).
[52] *See* Defendant's Reply Brief ("Def.'s Reply Br.") (D.I. 18).
[53] *See* Judicial Action Form (D.I. 24).
[54] The TIC Agreement is governed by Ohio law.  *See* Am. Compl., Ex. A § 10.5 ("This Agreement shall be governed by and construed under the internal laws of the State of Ohio without regard to choice of law rules.").
[55] Def.'s Mot. to Dismiss at 7-9.
[56] *Id.* at 10-11.
[57] *See* Am. Compl., Ex. B; Def.'s Mot. to Dismiss at 15-16.

of Frauds.[58]  Finally, Defendant maintains that the unjust enrichment and promissory estoppel claims should be dismissed because the parties' relationship is governed by the TIC Agreement, which bars these claims.[59]

In response, Plaintiff contends it adequately pleaded a breach of contract claim.  Specifically, Plaintiff argues it pleaded performance under the TIC Agreement because the Amended Complaint states that Plaintiff "fully performed under the TIC Agreement, including fulfilling its role as Property Manager."[60] Moreover, Plaintiff maintains that Defendant's written acknowledgement, *i.e.*, the April 23, 2019, letter, was an "enforceable agreement evidencing a bargained-for exchange."[61]  Plaintiff also asserts that Defendant's acknowledgement waived any argument that the Ladder Mortgage Loan was improper under the TIC Agreement.[62] To that end, Plaintiff argues neither the TIC Agreement nor the April 23, 2019, letter violates Ohio's Statute of Frauds because both are "in writing and signed by the party to be charged."[63]  Finally, Plaintiff argues its unjust enrichment and promissory estoppel claims should not be dismissed at this stage because they are pleaded in the

---

[58] *See* Def.'s Mot. to Dismiss at 17-18.
[59] *See id.* at 19-22.
[60] *See* Pl.'s Answering Br. at 13-14; *see also* Am. Compl. ¶¶ 13, 49.
[61] Pl.'s Answering Br. at 17.
[62] *Id.* at 16-17.
[63] *See id.* at 21-22.

12

alternative and "would come into play" if the TIC Agreement is found to be unenforceable.[64]

## ANALYSIS

Under Delaware Superior Court Civil Rule 12(b)(6), dismissal is appropriate when the complaint fails to state a claim upon which relief can be granted.[65] When the Court considers a motion to dismiss, it must: "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) [not dismiss the claim] unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[66]

Delaware's pleading standard is "minimal,"[67] but the liberal construction afforded to the complaint does not "extend to 'conclusory allegations that lack specific supporting factual allegations.'"[68]  "Accordingly, the Court will dismiss a complaint if the plaintiff fails to plead specific allegations supporting each element

---

[64] *Id.* at 23-24.
[65] *See* Del. Super. Ct. Civ. R. 12(b)(6).
[66] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).
[67] *Id.* at 536.
[68] *Surf's Up Legacy P'rs, LLC v. Virgin Fest, LLC*, 2021 WL 117036, at *6 (Del. Super. Jan. 13, 2021) (quoting *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998)).

13

of a claim or if no reasonable interpretation of the alleged facts reveals a remediable injury."[69]

### I. The Motion to Dismiss Count I is denied because Plaintiff adequately alleges a breach of contract claim under Ohio law.

Ohio law governs the claims for breach of contract, promissory estoppel, and unjust enrichment.[70] To prevail on a breach of contract claim under Ohio law, a plaintiff must prove: (1) "the existence of a contract," (2) "performance by the plaintiff," (3) "breach by the defendant," and (4) "resulting damages to plaintiff."[71] Defendant argues that the plain language of Section 2.1 of the TIC Agreement required Plaintiff to obtain the unanimous approval of both tenants to place a mortgage on the Property.[72] Defendant contends Plaintiff does not allege facts indicating it obtained such approval,[73] and the Ohio Court's 2016 factual findings do not indicate that such approval was obtained.[74] Plaintiff responds that Section 2.1 is irrelevant for purposes of its claim because Plaintiff is not seeking to enforce the mortgage.[75] Rather, Plaintiff argues it is suing under Sections 3 and 4.2 of the TIC Agreement to recover funds Plaintiff expended to rescue the Property from

---

[69] *Axogen Corp. v. Integra LifeSciences Corp.*, 2021 WL 5903306, at *2 (Del. Super. Dec. 13, 2021) (citing *Surf's Up Legacy P'rs, LLC*, 2021 WL 117036, at *6).

[70] *See* Am. Compl., Ex. A § 10.5 ("This Agreement shall be governed by and construed under the internal laws of the State of Ohio without regard to choice of law rules.").

[71] *Zipkin v. FirstMerit Bank N.A.*, 176 N.E.3d 86, 95 (Ohio Ct. App. 2021).

[72] Def.'s Mot. to Dismiss at 7-9; *see also* Am. Compl., Ex A § 2.1.

[73] *See* Def.'s Mot. to Dismiss at 9.

[74] *See id.*, Ex. 1 at 4-17 (laying out the Ohio Court's "Findings of Fact").

[75] *See* Pl.'s Answering Br. at 21.

foreclosure.[76]  Plaintiff contends its claim is no different than any other claim for money that Plaintiff, as Property Manager, expended to preserve or maintain the Property.[77]

Plaintiff's breach of contract claim is validly pleaded.  The Amended Complaint alleges that Plaintiff's funds were used to pay off the debt that the parties agreed to assume in 2005.  Defendant does not dispute the validity of the original debt incurred on or about October 4, 2005, when Plaintiff and Defendant entered into the TIC Agreement and "jointly assumed the original loan on the Property."[78]  According to the allegations in the Amended Complaint, Plaintiff obtained the Ladder Mortgage Loan to pay off the 2005 debt.  Defendant challenges whether that loan is an enforceable obligation against Defendant.  But Plaintiff alleges it has now paid off the Ladder Mortgage Loan using Plaintiff's own funds.[79]  This is sufficient to state a claim for breach of contract under Sections 3 ("Income and Liabilities) and 4.2 ("Additional Funds") of the TIC Agreement.  In other words, the source of the funds that Plaintiff used to pay off the 2005 debt does not alter the allegation in the Amended Complaint that Plaintiff ultimately used its own funds to satisfy that debt.  Whether Plaintiff may claim all of the interim expenses associated with the 2014

---

[76] *Id.* at 8, 21.
[77] *See id.* at 8
[78] *See* Am. Compl. ¶ 1.
[79] *See id.* ¶¶ 23-33.

Ladder Mortgage Loan is not an issue that can be resolved at this stage in the proceedings, nor is it a basis to dismiss the breach of contract claim altogether.

Even if Section 2.1 otherwise could serve as a basis for dismissal, Plaintiff's argument that Defendant waived this defense turns on factual issues that cannot be resolved on a motion to dismiss. The Amended Complaint pleads two instances in which Defendant admitted responsibility for payments under the Ladder Mortgage Loan and, therefore, waived its position that the Ladder Mortgage Loan was not a valid debt under the TIC Agreement.[80]

First, Plaintiff alleges in its Amended Complaint that Defendant admitted responsibility for payments "in connection with the appeal of a partial judgment entered" in Ohio.[81] Specifically, on December 30, 2016, the Ohio Court of Common Pleas found that any transactions involving Defendant after Gerston's death are void.[82] On appeal, Plaintiff raised as an assignment of error the failure to join Ladder Capital and the original lender as necessary parties.[83] Defendant argued to the Ohio Court of Appeals that reversal was not warranted on that basis because "the Gerston Trust (owner of [Defendant]) does not disclaim its share of the obligation to Ladder Capital for the refinancing," and Defendant "does not seek to undo the pay-off of

---

[80] *See id.* ¶ 18.
[81] *Id.* ¶ 19.
[82] *See id.* ¶ 20; Def.'s Mot. to Dismiss, Ex. 1 at 3.
[83] Am. Compl. ¶ 20.

16

the [original loan]."[84]   According to Plaintiff, the Ohio Court of Appeals relied on Defendant's representation in concluding that Ladder Capital and the original lender were not necessary parties to the Ohio litigation.[85]

Second, Plaintiff alleges Defendant admitted responsibility for payments under the Ladder Mortgage Loan "in consideration for and in exchange for the dismissal of [Plaintiff]'s initial demand for arbitration."[86]   Specifically, on April 23, 2019, counsel for Defendant wrote on behalf of Kimberlee Gerston:

> Kimberlee A. Gerston, owner of [Defendant], hereby acknowledges the obligation of [Defendant] on the Ladder Mortgage Loan dated April 2014 on the Giant Eagle Property and the cash call made by the manager of the TIC, subject to her reservation of all claims, entitlements, and setoffs available to her against Alan Robbins, [Plaintiff], AKMS, and Leah Robbins.[87]

Defendant, however, argues these two representations are "merely . . . unenforceable 'gratuitous promise[s]' under Ohio law."[88]   Moreover, Defendant argues the representations violate Ohio's Statute of Frauds.[89]

As to Defendant's argument that the promises were gratuitous and, by extension, unsupported by consideration, the Amended Complaint adequately

---

[84] *Id.* ¶ 21; *see also* Def.'s Reply Br., Ex. 2 at 7 (noting in a brief to the Ohio Supreme Court that the Ohio Court of Appeals found a declaratory judgment claim could proceed without Ladder Capital and the original lender because Kimberlee Gerston and the Gerston Family Trust stated they do "not 'intend' to attempt to avoid the transaction with [the original lender], Ladder Capital, or Giant Eagle").

[85] Am. Compl. ¶ 21.

[86] *Id.* ¶ 22.

[87] *Id.* ¶ 22, Ex. B.

[88] Def.'s Mot. to Dismiss at 10-11.

[89] *Id.* at 17.

pleaded consideration. Namely, mooting the appellate argument regarding the failure to join necessary parties could constitute consideration for Defendant's representation that it did not disclaim its share of the payment obligations to Ladder Capital.[90] Similarly, dismissal of the initial arbitration demand could serve as consideration for the April 23, 2019, letter in which Defendant acknowledged its obligations under the Ladder Mortgage Loan.[91] Therefore, drawing all inferences in Plaintiff's favor, the Court could conclude these "representations" were not mere gratuitous promises, but rather bargained-for exchanges.

As to the Statute of Frauds, Defendant has not cited caselaw indicating that a purported waiver of a defense or claim falls within the Statute of Frauds, or which of Ohio's several Statutes of Fraud applies.[92] Additionally, both purported waivers

---

[90] *See Fry v. FCA US LLC*, 143 N.E.3d 1108, 1114 (Ohio Ct. App. 2017) ("Consideration is the bargained for legal benefit or detriment. The presence or absence of consideration is a proper question for the court. However, once consideration is found to exist, the court may not inquire into the adequacy of that consideration." (internal citations omitted)).

[91] *See id.*

[92] Defendant, for instance, cites to the Ohio Code. *See* Def.'s Mot. to Dismiss at 17; OHIO REV. CODE ANN. § 1335.05 (West 2022). Defendant's brief cites to language from the Ohio Code stating that "[n]o action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt [or] default . . . of another person; . . . unless the agreement upon which such action is brought . . . is in writing and signed by the party to be charged." OHIO REV. CODE ANN. § 1335.05. This section of the Ohio Code does not appear to apply to a purported waiver of a defense or claim. Defendant also cites various cases, none of which focus on a purported waiver of a defense or claim. *See* Def.'s Mot. to Dismiss at 17-19 (citing *McGee v. Tobin*, 2005 WL 1018433 (Ohio Ct. App. Apr. 28, 2005) (discussing real estate contracts); *Alligood v. Procter & Gamble Co.*, 594 N.E.2d 668 (Ohio Ct. App. 1991) (discussing advertisements printed on a package); *Landskroner v. Landskroner*, 797 N.E.2d 1002 (Ohio Ct. App. 2003) (discussing an employee's compensation that could not be performed within one year because the alleged agreement covered a four-year time period); *Carlisle v. T & R Excavating, Inc.*, 704 N.E.2d 39 (Ohio Ct. App. 1997) (discussing an agreement to perform excavation at a preschool site); *N. Coast*

18

are contained in signed writings: (1) Gerston's brief to the Ohio Court of Appeals was signed by counsel,[93] and (2) the April 23, 2019, email letter was signed by counsel.[94] Further, Defendant has not cited caselaw for the proposition that the signed writing also must expressly set forth the consideration exchanged.[95] In short, factual disputes and the insufficient development of Defendant's legal argument preclude dismissal on the basis of the Statute of Frauds.

As a final point on the breach of contract claim, Defendant argues Plaintiff was the sole entity responsible for repaying the Ladder Mortgage Loan and could not assign that responsibility to another party without prior approval of Ladder Capital.[96] This argument lacks persuasive force and fails. The obligations to Ladder Capital have been satisfied, and Plaintiff is not seeking to assign its responsibility under the terms of that loan. Rather, Plaintiff seeks to recoup the money it paid on

---

*Cookies, Inc, v. Sweet Temptations, Inc.*, 476 N.E.2d 388 (Ohio Ct. App. 1984) (discussing the transfer of a seller's leasehold interest)).

[93] *See* Def.'s Mot. to Dismiss, Ex. 3.

[94] *See* Am. Compl., Ex. B.

[95] Defendant cites *McGee* for the proposition that the Statute of Frauds requires the writing to contain the consideration exchanged. *See* Def.'s Mot. to Dismiss at 17-18. However, *McGee* concerns a contract for the sale of real estate, which is distinguishable from the purported agreement at issue in this case. *See McGee*, 2005 WL 1018433, at *1 ("At issue is whether a document signed by the parties is a contract for the sale of real estate."). Additionally, Defendant makes a parenthetical reference to *Alligood* for the proposition that consideration is required. However, that case discusses Ohio contract law generally, and it does not discuss the Statute of Frauds. *See generally Alligood*, 594 N.E.2d 668.

[96] *See* Def.'s Mot. to Dismiss at 16-17.

Defendant's behalf to preserve Defendant's interest in the Property, which otherwise would have been lost to foreclosure.

**II. Plaintiff's quasi-contract claims are pleaded in the alternative and survive dismissal because it is not clear that the subject matter of those claims is covered by an express, enforceable agreement.**

Plaintiff expressly pleaded unjust enrichment (Count II) and promissory estoppel (Count III) in the alternative in its Amended Complaint.[97] Both of those counts survive dismissal under Rule 12(b)(6).

Regarding the unjust enrichment claim, if the Court concludes the TIC Agreement is unenforceable against Defendant as it relates to the Ladder Mortgage Loan, Plaintiff seeks to disgorge money paid to preserve Defendant's interest in the Property, which would have been lost to foreclosure on the original 2005 loan.[98] Under Ohio law, to prevail on an unjust enrichment claim, Plaintiff "must establish three elements: (1) a benefit conferred by [Plaintiff] upon [Defendant]; (2) knowledge by [Defendant] of the benefit; and (3) retention of the benefit by [Defendant] under circumstances where it would be unjust to do so without

---

[97] *See* Am. Compl. ¶¶ 58, Prayer for Relief ¶ (e).
[98] *See id.* ¶ 58.

20

payment."[99] "Ohio law does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject."[100]

Here, Plaintiff adequately pleaded unjust enrichment as an alternative claim. First, Plaintiff conferred a benefit upon Defendant because Plaintiff "funded 100% of the costs associated with paying off the Ladder Mortgage Loan despite owning only a 23.38% interest in the Property," thereby saving the Property from foreclosure.[101] Second, Defendant was aware of this benefit. Finally, Defendant retained the benefit by having its interest in the Property preserved.[102] And, Defendant contends the TIC Agreement did not obligate Defendant to repay any of those funds. At this early stage of the proceedings, the Court cannot conclude that there is no basis under which Plaintiff could recover on its unjust enrichment claim.[103]

Regarding the promissory estoppel claim, Plaintiff alleges it repaid the entire Ladder Mortgage Loan in reliance on Defendant's promise acknowledging its obligation under that Loan.[104] Under Ohio law, to state a claim for promissory

---

[99] *Clifton v. Johnson*, 2016 WL 7231124, at *4 (Ohio Ct. App. Dec. 6, 2016) (internal quotations omitted); *see also Padula v. Wagner*, 37 N.E.3d 799, 813 (Ohio Ct. App. 2015).

[100] *Padula*, 37 N.E.3d at 813.

[101] Am. Compl. ¶ 60.

[102] *See id.* ¶ 63.

[103] *See Cent Mortg. Co.*, 27 A.3d at 535 (stating that, in the motion to dismiss context, the Court should "not [dismiss a claim] unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances").

[104] *Id.* ¶ 68-69.

estoppel, Plaintiff must plead: "(1) a clear and unambiguous promise was made [by Defendant]; (2) upon which it would be reasonable and foreseeable for [Plaintiff] to rely; (3) actual reliance on the promise; and (4) [Plaintiff] was injured as a result of the reliance."[105]

Here, Plaintiff adequately pleaded promissory estoppel as an alternative remedy if the Court finds that Defendant is not obligated to fund the cash calls under the TIC Agreement. First, on April 23, 2019, Defendant purportedly made an unambiguous promise to pay Plaintiff for the cash calls relating to the Ladder Mortgage Loan.[106] Second, it was reasonable for Plaintiff to rely on a promise sent by Defendant's counsel. Third, Plaintiff alleges in the Amended Complaint that it relied on that promise in arranging for repayment of the Ladder Mortgage Loan.[107] Finally, Plaintiff alleges it was injured in the amount of $4,815,623 as a result of the reliance.[108] Applying Delaware's liberal pleading standard, those allegations

---

[105] *A N Bros. Corp. v. Total Quality Logistics, L.L.C.*, 59 N.E.3d 758, 768-69 (Ohio Ct. App. 2016) (internal quotations omitted); *Ford Motor Credit Co. v. Ryan*, 939 N.E.2d 891, 921-22 (Ohio Ct. App. 2010).
[106] *See* Am. Compl. ¶ 67, Ex. B.
[107] *Id.* ¶ 68-69.
[108] *Id.* ¶ 70.

adequately allege a claim for promissory estoppel as an alternative to the breach of contract claim.

## CONCLUSION

Defendant's Motion to Dismiss Count I (breach of contract), Count II (unjust enrichment, in the alternative), and Count III (promissory estoppel, in the alternative) is **DENIED**.  **IT IS SO ORDERED**.